UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSEPH SROUR,

                        Plaintiff,                  23 Civ. 9489

        -against-


NEW YORK CITY, New York,
EDWARD A. CABAN, in his Official
Capacity, and NICOLE BERKOVICH,
Individually,
                        Defendants.
------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF PROPOSED ORDER TO SHOW CAUSE
# FOR PRELIMINARY INJUNCTION


**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff, Joseph Srour*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

CONSTITUTIONAL AND LEGAL FRAMWORK ................................................. 6

LEGAL ARGUMENT ............................................................................................... 8

I. PLAINTIFF HAS ARTICLE III STANDING .................................................. 8

     A. Injury In Fact ............................................................................................... 8

     B. Causal Connection ..................................................................................... 12

     C. Redressability ........................................................................................... 12

II. PLAINTIFF WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE
ABSENCE OF AN INJUNCTION .......................................................................... 12

III. PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .. 12

     A. Plaintiff's Conduct Is Presumptively Protected ........................................ 13

     B. The Burden Shifts To New York City ....................................................... 13

IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST AND
BALANCE OF HARDHIPS WEIGHS IN PLAINTIFF'S FAVOR ........................... 15

CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Dream Act Coalition*,
   757 F.3d 1053 (9th Cir. 2014) ............................................................ 15

*Ashcroft v. Am. C.L. Union*,
   542 U.S. 656 (2004) ....................................................................... 13

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*,
   331 F.3d 342 (2d Cir. 2003) ............................................................... 8

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ....................................................................... 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................ 9

*Coronel v. Decker*,
   449 F. Supp. 3d 274 (S.D.N.Y. 2020) .................................................... 15

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ..................................................................... 6, 7

*Doremus v. Bd. of Educ. of Hawthorne*,
   342 U.S. 429 (1952) ........................................................................ 8

*Elrod v. Burns*,
   427 U.S. 347 (1976) ...................................................................... 12

*Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   2023 WL 5617899 (E.D. Va. Aug. 30, 2023) ........................................... 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ...................................................................... 13

*Hardaway v. Nigrelli*,
   639 F. Supp. 3d 422 (W.D.N.Y. 2022) ..................................................... 8

*J.S.R. by & through J.S.G. v. Sessions*,
   330 F. Supp. 3d 731 (D. Conn. 2018) .................................................... 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 8

i

*McDonald v. Chicago*,
    561 U.S. 742 (2010) .................................................................................. 6, 12

*Ms. L. v. U.S. Immigr. & Customs*,
    415 F. Supp. 3d 980 (S.D. Cal. 2020) ............................................................ 15

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) .......................................................... 15

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018) ......................................................................... 8, 10

*New York Progress & Protection PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ........................................................................... 15

*New York Times Co. v. United States*,
    403 U.S. 713 (1971) ........................................................................................ 12

*NYSRPA v. Bruen*,
    142 S.Ct. 2111 (2022).............................................................................. Passim

*Robertson v. Baldwin*,
    165 U.S. 275 (1897) .......................................................................................... 7

*Srour v. New York City*,
    2023 WL 7005172 (S.D.N.Y. Oct. 24, 2023).............................................. 2, 7

*Srour v. New York City*,
    2023 WL 7091903 (S.D.N.Y. Oct. 26, 2023)............................................. 2, 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 8

**Statutes**

18 U.S.C. § 922(g) .................................................................................................. 14
U.S. Const. amend II.................................................................................................. 6

**Rules**

Federal Rule of Civil Procedure 65 ..................................................................... 1, 16

**Regulations**

38 RCNY 3-03 ................................................................................................. Passim
38 RCNY 3-03 ................................................................................................. Passim
New York City Administrative Code 10-303(a)..................................................... 2, 9

## PRELIMINARY STATEMENT

Joseph Srour, by and through his attorneys, submits the within Memorandum of Law, Declaration of Amy L. Bellantoni with annexed exhibits (which include the Declaration of Joseph Srour with annexed exhibit dated October 29, 2023) in support of the accompanying (proposed) Order to Show Cause for a preliminary injunction of New York City regulations governing the grounds to deny a license to possess rifles and shotguns [38 RCNY 3-03] and a license to possess handguns. [38 RCNY 5-10].

More specifically, pursuant to Federal Rule of Civil Procedure 65, Plaintiff seeks a preliminary injunction of **(i)** the "good moral character" requirements of 38 RCNY 3-03 and 38 RCNY 5-10; **(ii)** 38 RCNY 3-03 (a), (e), (h), and (n); **(iii)** 38 RCNY 5-10 (a), (e), (h), and (n); and **(iv)** the NYPD License Division's classification of Plaintiff as "both 'dangerous' and not law-abiding."

## STATEMENT OF FACTS

Joseph Srour ("Plaintiff") is a resident of New York City, New York. [Verified Complaint annexed to the Declaration of Amy L. Bellantoni as Ex. 1 at ¶ 15].

Plaintiff is not prohibited from possessing, purchasing, receiving, or transferring firearms under state or federal law, and has never been convicted of a crime or any violation of the New York State Penal Law. [Ex. 1 ¶16].

***Plaintiff Previously Applied for Firearm Licenses, And Was Denied***

In 2018, Plaintiff applied to the NYPD License Division for a permit to possess rifles and shotguns in his home for self-protection, which was denied. [Ex. 1 ¶¶ 21, 23; Ex. 2].

In 2019, Plaintiff applied to the NYPD License Division for a permit to possess handguns in his home for self-protection, which was also denied. [Ex. 1 ¶¶ 22, 23; Ex. 3].

1

Plaintiff timely filed an internal appeal of the denial of each application with the NYPD License Division, Appeals Unit; his appeals were denied. [Ex. 1 ¶ 23; Ex. 4].

The License Division relied on the following regulations to deny Plaintiff's <u>Rifle Shotgun License</u> application: New York City Administrative Code 10-303(a)(2) and (a)(9), and 38 RCNY 3-03 (a), (e), (h), and (n) ("R/S License"). [Ex. 1 ¶24; Ex. 2; Ex. 3].

The License Division relied on the following regulations to deny Plaintiff's <u>Handgun License</u>: New York City Administrative Code 10-303(a)(2) and (a)(9), and 38 RCNY 5-10 (a), (e), (h), and (n) ("Handgun License"). [Ex. 1 ¶ 25; Ex. 3; Ex. 4].

***Plaintiff Commences Litigation ("Srour I")***

Plaintiff filed an action against New York City in the Federal District Court for the Southern District of New York, entitled *Srour v. New York City*, 22 Civ. 003 [*Srour I*] for violations of his Second Amendment rights. In the meantime, the Supreme Court issued its opinion in *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022). [Bellantoni Dec. Ex. 1 ¶¶ 26-27]. On December 16, 2022, the City amended its firearm regulations, including 38 RCNY 3-03 and 38 RCNY 5-10. [*Id.* at ¶ 28].

On October 24, 2023, the district court granted, in part, Plaintiff's motion for summary judgment, including his prayers for a declaratory judgment and permanent injunction of NYC Admin. Code 10-303(a)(2) and (a)(9).[1] See, *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *10 (S.D.N.Y. Oct. 24, 2023). [*Id.* at ¶ 29].

On October 25, 2023, the City filed a Notice of Interlocutory Appeal [ECF 25] and moved for a stay of this Court's Order pending appeal [ECF 45], which was opposed by Plaintiff [ECF

---

[1] Plaintiff's prayer for equitable relief was denied as to 38 RCNY 3-03 and 38 RCNY 5-10. Because those regulations were amended by the City post-denial, the Court determined that Srour "has not been denied permission to possess firearms pursuant to a City official's application of the current version of either Section 3-03 or Section 5-10." *Srour*, at *11.

48] and denied by the Court. See, *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2023 WL 7091903, at *1 (S.D.N.Y. Oct. 26, 2023) (denying motion but continuing temporary stay through 11:59 p.m. on October 30, 2023).

***October 26, 2023 -- Plaintiff Reapplies for A R/S License and Handgun License (Premises)***

On October 26, 2023, Plaintiff filed applications with the License Division for a R/S License and a Handgun License (Premise) through the NYPD online portal and will apply to the License Division for a concealed carry license upon taking and completing the New York State-mandated 18-hour course for concealed carry licenses.[2] [*Id.* at ¶¶ 31-32 and annexed Srour Dec. at Ex. 1].

The events underlying the License Division's denial of Plaintiff's previous applications have not changed – nor can they. Plaintiff still has a history of two arrests over 27 years ago, each having been dismissed and sealed; a driving history with violations pre-dating 2001 – over 22 years ago; and two summonses for navigational law violations in 2012 and 2015.

There is no likelihood that Plaintiff's pending applications will be approved by the License Division; his applications are futile. Plaintiff's right to possess any type of firearm for self-defense in New York City is, therefore, permanently terminated.

For one, the License Division under Ms. Berkovich's direction continues to believe that "Plaintiff is both 'dangerous' and not law-abiding, as it did under the direction of former its Director, Jonathan David. [See, *Srour I Dkt. Sheet,* City's October 25, 2023 letter motion for stay pending appeal [ECF 45, p. 3 n. 3] ("Regardless, ***the License Division*** believes that Plaintiff is ***both 'dangerous' and not law-abiding***."].

---

[2] Penal Law §§ 400.00(1)(o), 400.00(19).

The City's motion did not assert that the *City* believes Plaintiff to be "both dangerous and not law-abiding" – rather, it specifically identifies "the License Division." *Id.*

The City's statement reveals a policy and procedure within the License Division directed at Plaintiff personally, which can only be described as a malicious, and wanton policy by Ms. Berkovich, deliberately indifferent to Plaintiff's Second Amendment rights and intended to oppress the exercise thereof.

The License Division's predetermined bias against Plaintiff forecloses any possibility that his pending applications will be approved – meaning that Plaintiff has suffered an absolute termination of his Second Amendment by the License Division. Plaintiff cannot change his past – and Plaintiff's past is the *only* criterion relied on by the License Division – then, and now under Ms. Berkovich.

The City denied Plaintiff's prior applications based on traffic offenses from over 22 years ago, false arrest from 27 years ago, and two navigational law violations from 2012 and 2015. On those same stale and immaterial events, the License Division permanently brands Plaintiff as unfit to possess firearms for self-defense.

Even if the City were to 'walk back' its public admission[3], the enforcement of the .

The December 2022 Amendments yielded <u>no change</u> to subs. (a), (e), and (h) of 3-03 and 5-10. Plaintiff has still "been arrested…for a crime or violation…in any federal state or local jurisdiction," which is grounds for denial under 3-03(a) and 5-10(a), even though the arrests occurred 27 years ago and were terminated in his favor.[4]

---

[3] A retraction of the City's statement at this point would mean either that the statement was false and only advanced in an attempt to fortify an anemic appeal or that, having realized the repercussions of exposing their unwavering opinion of Plaintiff, the City is scrambling to limit the fallout.
[4] See, 22 Civ. 3, ECF 27-1.

Plaintiff still has "a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles," which are grounds for denial under 3-03(h) and 5-10(h) – even though that history predates 2001. [Ex. 4].

Plaintiff still must "disclose his complete arrest history, including sealed arrests,"[5] which tees up the License Division's enforcement of sub. (a) to deny Plaintiff's current applications, as it was before. [Ex. 2; Ex. 3; Ex. 4].

Sub. (n) still allows denial of an application for an "an unwillingness to abide by the law, a lack of candor towards lawful authorities, [and] a lack of concern for the safety of oneself and/or other persons and/or for public safety…" – all vague, undefined, and broadly discretionary terms.

Unlike the additional language in the amended 3-03(n), 5-10(n) does not allow for a consideration of "all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings" in the context of a handgun license."

The City's disparate treatment of handguns and long guns, which are all weapons in common use and protected "Arms," further highlights the arbitrariness of the City's licensing scheme.

The denial of Plaintiff's applications is *certain*. Words may have been moved around, added and/or removed from 3-03 and 5-10, but there is no substantive difference between the pre- and post-amendment versions of the regulations. [Ex. 5; Ex. 6].

Plaintiff is suffering actual harm from the enforcement of regulations and policies that ***absolutely bar*** his exercise of preexisting and presumptively protected rights.

---

[5] Sub. (e) is also a backdoor means to deny a license. State law requires every license applicant to be fingerprinted and investigated through the FBI and New York State databases to identify the existence of prohibiting information. Penal Law § 400.00(4). No account is taken of unintentional and/or immaterial omissions.

In addition to the presumed harm arising from the loss of constitutional rights, Plaintiff continues to experience the psychological weight of being stripped of the ability to protect and defend himself, his home, and his family – a heaviness magnified by recent events domestically and in the Middle East. [Ex. 1 at ¶¶ 51-54].

Plaintiff is an Israeli-born American, and Jewish. As such, he is a member of a group that has been targeted throughout history for violent attacks and extermination worldwide. The anti-Semitic and anti-Israel demonstrations in New York City,  fueled by national and international events, amplify Plaintiff's existing feelings of vulnerability because, but for the City's regulations, Plaintiff would be armed and able to effectively defend himself, his home, and his family – and that ability brings a peace of mind that cannot be quantified. [Ex. 1 at ¶¶ 51-54].

In addition to the presumed and irreparable constitutional harm, Defendants' conduct has caused Plaintiff to suffer, *inter alia*, stress, worry, and the physical manifestations of the same. [Ex. 1 at ¶¶ 51-54].

## CONSTITUTIONAL AND LEGAL FRAMWORK

### The Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend II. The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  *McDonald v. Chicago*, 561 U.S. 742 (2010).

The Second Amendment codified the *preexisting*, guaranteed, and individual right to possess and carry weapons in case of confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied); accord *Bruen*, at 2127. The "central component" of that right is "individual self-defense." *Bruen,* at 2127 quoting, *McDonald v. City of Chicago*, 561 U.S. 742,

767, 768 (2010) (plurality) (quoting *Heller*, 554 U.S. at 599) (the Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty").

The Second Amendment "was not intended to lay down a 'novel principle' but rather but rather codified a right 'inherited from our English ancestors.' " *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *5 (S.D.N.Y. Oct. 24, 2023) quoting, *Heller*, at 592 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)) (alteration omitted); accord *NYSRPA v. Bruen*, 142 S. Ct. 2111, 2127 (2022).

**Standard for Second Amendment Challenges**

The Supreme Court's decision in *Bruen* articulated the standard for applying the Second Amendment to a government firearm regulation:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest.
>
> Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.
>
> Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126, 2129-30.

To determine whether a firearm regulation is consistent with the Nation's historical tradition of firearm regulation, a court is not required to embark on its own historical inquiry. Rather, a court is "entitled to decide a case based on the historical record compiled by the parties." *Srour v. New York City,* No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *5 (S.D.N.Y. Oct. 24, 2023) quoting, *Bruen*, at 2130 n.6.

**Standard For Preliminary Injunction**

Generally, a party seeking preliminary injunctive relief must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest. *Hardaway v. Nigrelli*, 639 F. Supp. 3d 422, 430–31 (W.D.N.Y. 2022) quoting, *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (cleaned up).

Where the preliminary injunction would stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must satisfy the more rigorous prong of likelihood of success at step two. *Id.* quoting, *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 349 (2d Cir. 2003) (cleaned up).

## LEGAL ARGUMENT

## I. PLAINTIFF HAS ARTICLE III STANDING

To establish standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Hardaway*, 639 F. Supp. 3d at quoting, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

### A. Injury In Fact

The party who invokes the power of the federal courts must be able to show not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement. *Srour*, at *11 quoting, *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 434 (1952).

8

To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending. Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient. *Srour,* at 11 quoting, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up) (emphasis in original).

Plaintiff subjected himself to the challenged licensing scheme by applying for a R/S License and Handgun License; he has standing to challenge the City's enforcement of 38 RCNY 3-03 and 38 RCNY 5-10, as amended.[6]

<u>38 RCNY 3-03 and 38 RCNY 5-10 – Good Moral Character</u>

In *Srour I*, this Court concluded "the fatal problem with subsections (a)(2) and (a)(9) of New York City Administrative Code Section 10-303 and the former versions of Sections 3-03 and 5-10 of Title 38 of the RCNY continues to lie in the broad discretion afforded to City officials in determining whether someone may exercise their Second Amendment right." *Srour I,* at *15 (S.D.N.Y. Oct. 24, 2023).

Denying the City's motion for a stay pending appeal in *Srour I*, this Court reiterated:

 Defendants' argument that the current version of Section 3-03 provides objective criteria that somehow constrain a licensing officer's discretion under Section 10-303(a)(2)—particularly given the deletion of the "other good cause" language—is unpersuasive for another reason.

As the Court explained in the Opinion, the inclusion of objective components does not cure the constitutional defects in allowing a licensing officer to deny

---

[6] Plaintiff is also subject to the enforcement of NYC Admin. Code § 10-303(a)(2) and (a)(9) and will continue to be subject to such provisions until the stay of this Court's permanent injunction expires.

individuals their Second Amendment rights based on "good moral character" in the first place. Opinion at 28.

As the Court noted, "the very *notion*[ ] of 'good moral character' ... [is] inherently exceedingly broad and discretionary." *Id.* at 29 (emphasis added). "Someone may be deemed to have good moral character by one person, yet a very morally flawed character by another." *Id.* And Defendants were likewise unable to demonstrate a tradition of similar regulations, as *Bruen* requires. *Id.* at 32; see *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022) ("To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.").

*Srour,* 2023 WL 7091903, at *1 (S.D.N.Y. Oct. 26, 2023).

Plaintiff's previous firearms applications were denied under the former language of 38 RCNY 3-03 and 5-10 based on the City's opinion that he "lacked good moral character." [Ex. 5]. The amended regulations continue to require a finding of "good moral character," which is undefined, and invests broad discretion in the License Division to make such an assessment. [Ex. 6].

The events giving rise to the City's denial of Plaintiff's previous applications have not changed, nor can they. And the License Division's continued and unfounded opinion that Plaintiff "is both 'dangerous' and not law-abiding" forecloses any possibility that the License Division will approve Plaintiff.

<u>38 RCNY 3-03 and 38 RCNY 5-10 – The Subsections</u>

Even if the "good moral character" requirement was omitted from 3-03 and 5-10, the challenged subsections will be enforced against Plaintiff[7] and cause the *certain* and *imminent* denial of his applications.

---

[7] See, e.g., *Srour I*, at *20-21 (discussing severability).

The City denied Plaintiff's previous applications under the then-existing subsections: 38 RCNY 3-03 (a), (e), (h), and (n) [R/S License] and 38 RCNY 5-10 (a), (e), (h), and (n) [Handgun License].[8] [Ex.2; Ex. 3; Ex. 4; Ex. 5].

The Amendments to subs. (a), (e), and (h) <u>yielded no changes</u>. [Ex. 5; Ex. 6].

Plaintiff has still "been arrested…for a crime or violation…in any federal state or local jurisdiction,"[9] still has a "poor driving history, multiple driver license suspensions and/or declared a scofflaw NYS DMV[10] and he is still required to "disclose his complete arrest history, including sealed arrests,"[11] which 'tees up' the License Division's enforcement of sub. (a) to deny Plaintiff's current applications, as it did before.

As before the amendments, sub. (n) allows applications to be denied for "an unwillingness to abide by the law, a lack of candor towards lawful authorities, [and] a lack of concern for the safety of oneself and/or other persons and/or for public safety…" – all vague, undefined, and broadly discretionary terms. [Ex. 6].

And unlike the amendments to 3-03(n), 5-10(n) does not allow for a consideration of "all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings" in the context of a handgun license. The City's disparate treatment of weapons in "common use"[12] highlights the arbitrary and constitutionally unsound nature of the City's licensing scheme. [Ex. 6].

The injury to Plaintiff is concrete, particularized, actual and imminent. The violation of Plaintiff's rights under the Amended Regulations is *certain* and *certainly impending*.

---

[8] Subsections (a), (e), and (h) of 3-03 and 5-10 are identical.
[9] Grounds for denial under 3-03(a) and 5-10(a).
[10] Grounds for denial under 3-03(h) and 5-10(h).
[11] Sub. (e) is also a backdoor means to deny a license. State law requires every license applicant to be fingerprinted and investigated through the FBI and New York State databases to identify the existence of prohibiting information. Penal Law § 400.00(4). The regulation does not take into account unintentional and/or immaterial omissions.
[12] *Bruen*, at 2134; *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curium) (stun guns).

Though Plaintiff reapplied and 'subjected himself to the process,' his reapplication is futile. As the City publicly announced, the License Division believes that Plaintiff is both dangerous and not law-abiding. Plaintiff is ***permanently barred*** by the License Division from engaging in Second Amendment protected conduct.

### B. Causal Connection

The violation of Plaintiff's Second Amendment rights is directly traceable to the challenged regulations and Defendants.

### C. Redressability

Plaintiff's constitutional harms will be redressed through enjoining the challenged regulations and policies.

## II.  PLAINTIFF WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION

Plaintiff's Second Amendment rights are not only 'threatened' they are ***foreclosed  now***, 'at the time relief is sought.' See, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) citing, *New York Times Co. v. United States*, 403 U.S. 713 (1971).

As with the First Amendment, the loss of Second Amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, at 373 (First Amendment). And the right to possess and carry weapons is not a second-class right subject to an entirely different body of rules than the other Bill of Rights guarantees. *Bruen*, at 2156 quoting, *McDonald v. Chicago*,  561 U.S. 742, 780 (2010) (plurality).

## III.  PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The burdens at the preliminary injunction stage track the burdens at trial. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

The standard for Second Amendment challenges articulated in *Bruen* is: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30.

**A.  Plaintiff's Conduct Is Presumptively Protected**

The plain text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, at 592; accord *Bruen*, at 2134 (having "little difficulty" concluding that "the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for self-defense.").

Plaintiff's proposed conduct -- possessing handguns, rifles, and shotguns for lawful purposes -- is protected by the plain text of the Second Amendment.

**B. The Burden Shifts To New York City**

Plaintiff having demonstrated that his conduct is protected by the plain text of the Second Amendment, he "must be deemed likely to prevail," [*Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 666 (2004)] unless the City meets its burden of proof under *Bruen.*

The City must now come forward with historical analogues proving 38 RCNY 3-03 and 5-10 are consistent with the plain text of the Second Amendment, and this Nation's historical traditions. *Bruen*, 142 S. Ct. at 2129-30.

No set of circumstances exist under which the challenged regulations would be valid; the laws are unconstitutional in all of their applications.

<u>38 RCNY 3-03 and 38 RCNY 5-10 – Good Moral Character</u>

The plain text of the Second Amendment and Supreme Court precedent foreclose any chance the City will succeed in justifying its "good moral character" requirement. Assessing one's

"moral character" is as arbitrary and subjective as the "proper cause" requirement invalidated in *Bruen*, and in similar fashion, the City offers no guidepost for satisfying their inquiry. See, *Bruen*, at 2122 (no New York statute defines "proper cause"); *c.f,* 18 U.S.C. § 922(g) (enumerating objective prohibitors to the transfer, receipt, possession, and purchase of firearms).

Recall that *public carry* restrictions did not arise until the mid-1800s. *Bruen*, at 2145 ("Only after the ratification of the Second Amendment in 1791 did public-carry restrictions proliferate.")

But this case is about *possessing* handguns, rifles, and shotguns in the first instance.[13]

There are no historical analogues to be found. "Shall not infringe" means the *government* shall not get in the way of the Right.[14]

> Without doubt, the very notions of "good moral character" and "good cause" are inherently exceedingly broad and discretionary. Someone may be deemed to have good moral character by one person, yet a very morally flawed character by another. Such unfettered discretion is hard, if not impossible, to reconcile with *Bruen*.

*Srour I*, at *14.

<u>38 RCNY 3-03 and 38 RCNY 5-10 – The Subsections</u>

Sub. (a), (e), and (h), while arguably objective in nature, lack any semblance of an historical analogue.  The conduct being prevented is the peaceful possession of firearms for the protection of self and family. The City has ***zero*** chance of meeting its burden.

---

[13] Even California does not require the government's permission to *possess* firearms, only to carry them in public.

[14] Asking permission contradicts the plain text. And there is no historical analogue for licensing in the first instance. What sense does it make to say that the right to keep and bear arms "shall not be infringed" but only after 'the People' seek and obtain permission? And having to satisfy an official's *opinion of their morality* is salt in the wound. Absurd and irrational.

Like the "moral character" requirement, sub. (n) is undefined, subjective, and discretionary – unfettered power the Founders would *never* have agreed to hand over to a ruling authority. The plain text indicates as much.

## IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST AND BALANCE OF HARDHIPS WEIGHS IN PLAINTIFF'S FAVOR[15]

As with irreparable injury, when a plaintiff establishes a likelihood that a governmental policy violates the U.S. Constitution, they have also established that both the public interest and the balance of the equities favor a preliminary injunction. *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld," *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) (internal quotation marks omitted), a proposition that certainly rings true for rights as "fundamental" as those protected by the Second Amendment." *Bruen*, 142 S. Ct. at 2151.

The government does not have an interest in the enforcement of an unconstitutional law. *Srour I*, at *21 citing, *N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (internal quotation marks omitted); also citing, *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 22 Civ. 410, 2023 WL 5617899, at *6 (E.D. Va. Aug. 30, 2023) ("[A]ny minimal hardship that may befall the Government from not being able to enforce the unconstitutional statute

---

[15] Balancing *hardships* is not to be conflated with 'balancing *interests*,' as the City will likely do. Public safety and 'interest balancing' are impermissible in Second Amendment challenges.

and regulations must yield to that harm suffered by the individual whose constitutional rights are being denied by the Government's conduct.").[16]

Hardship to the City, if any, would minimal because Plaintiff is not challenging every subsection of 3-03 and 5-10; the remaining subsections would be "valid and enforceable." *Srour I,* at *21.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 65, Plaintiff's motion for a preliminary injunction should be granted in its entirety and an Order should be issued enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing **(i)** the "good moral character" provisions of 38 RCNY 3-03 and RCNY 5-10; **(ii)** 38 RCNY 3-03 (a), (e), (h), and (n); **(iii)** 38 RCNY 5-10 (a), (e), (h), and (n); and **(iv)** the License Division's classification of Plaintiff as "both 'dangerous' and not law-abiding" until such time as the Court resolves Plaintiffs' application for permanent relief in this case.

Dated: October 29, 2023
      Scarsdale, New York

                        THE BELLANTONI LAW FIRM, PLLC
                        *Attorneys for Plaintiff, Joseph Srour*

                        _____/s/_____
                        Amy L. Bellantoni (AB3061)
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583
                        abell@bellantoni-law.com

---

[16] A government claiming 'hardship' to avoid the injunction of overtly unconstitutional regulations are the very people the Founders envisioned when codifying and ratifying the Second Amendment.