UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSEPH SROUR,

                      Plaintiff,                  23 Civ. 9489 (JPC)

    -against-

                                                **VERIFIED FIRST**
                                                **AMENDED COMPLAINT**
NEW YORK CITY, New York,
EDWARD A. CABAN, in his Official
Capacity, and NICOLE BERKOVICH,
Individually,
                      Defendants.
------------------------------------------------------x

       Plaintiff, JOSEPH SROUR, by and through his attorneys, states as his First Amended Verified Complaint for declaratory, injunctive, and other relief against the defendants as follows:

## NATURE OF THE ACTION

       1.      In this action, *Srour II*, Plaintiff seeks compensatory, declaratory, and injunctive relief, including presumed nominal damages, compensatory damages, punitive damages, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing and irreparable harm to Plaintiff arising from Defendants' enforcement of regulations and policies constituting an absolute bar to the exercise of the preexisting rights protected by the Second Amendment and Fourteenth Amendment.

       2.      This action challenges the constitutionally of 38 RCNY 3-03 and RCNY 5-10, facially and as applied.

       3.      In that connection, Plaintiff seeks a judicial declaration that **(i)** the "good moral character" requirements of 38 RCNY 3-03 and RCNY 5-10 violate the Second Amendment; **(ii)** 38 RCNY 3-03 (a), (e), (h), and (n) violate the Second Amendment; and **(iii)** 38 RCNY 5-10 (a),

1

(e), (h), and (n) violate the Second Amendment. The regulations are repugnant to the plain text of the Second Amendment and lack any cognizable historical analogue.

4. Plaintiff seeks an Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing **(i)** the "good moral character" provisions of 38 RCNY 3-03 and RCNY 5-10; **(ii)** 38 RCNY 3-03 (a), (e), (h), and (n); and **(iii)** 38 RCNY 5-10 (a), (e), (h), and (n).

5. Plaintiff further seeks **(i)** a judicial declaration that the New York City License Division's classification of Plaintiff as "both dangerous and not law-abiding" violates his constitutional rights, including those protected by the Second Amendment; and **(ii)** a preliminary and permanent injunction thereof.

6. Plaintiff also seeks a judicial declaration that a regulation requiring Americans to seek and obtain a license, permit, or any other permission from the government to lawfully possess long guns (rifles and shotguns) violates the plain text of the Second Amendment and is inconsistent with our Nation's historical traditions.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1343, § 2201, § 2202 and 42 U.S.C. § 1983 and § 1988.

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

9. Plaintiff JOSEPH SROUR ("Plaintiff"), is a natural person, a citizen of the United States, and a resident of New York City, New York.

10. Defendant NEW YORK CITY, New York (the "City"), is a municipal corporate subdivision of the State of New York duly existing by reason of, and pursuant to, the laws of the State.

11. Defendant EDWARD A. CABAN ("Commissioner Caban"), who is sued herein in his official capacity only, is the Police Commissioner of the New York City Police Department ("NYPD"). In that position, Commissioner Caban is the statutory licensing authority for the five boroughs comprising New York City: Bronx, New York, Richmond, Kings, and Queens.[1]

12. In that position, Commissioner Caban has authority over the implementation, and enforcement of the policies and procedures for the licensing handguns, rifles and shotguns, including 38 RCNY 3 and 38 RCNY 5, as exercised through the NYPD License Division (the "License Division"). As with his predecessor(s), Commissioner Caban has delegated his authority as statutory licensing officer to the Director of the NYPD License Division to make all final determinations on Handgun and Rifle/Shotgun license applications.

13. Defendant NICOLE BERKOVICH, ("Ms. Berkovich"), who is sued herein in her individual capacity, is the Director of the NYPD License Division. In that capacity, Ms. Berkovich has supervisory authority over the staff of the License Division and the implementation of the City's licensing regulations.

14. Ms. Berkovich exercises final authority over the denial of Rifle/Shotgun Licenses ("R/S License") and Handgun License applications, as did her predecessor former Director, Jonathan David. Ms. Berkovich's opinion that an applicant is 'dangerous' and/or not law-abiding will result in the denial of that individual's application.

---

[1] Penal Law § 265.00(10).

## MATERIAL FACTS

15. Plaintiff is a resident of New York City, New York.

16. Plaintiff has no disqualifiers to possessing, purchasing, receiving, or transferring firearms under state or federal law. Plaintiff has never been convicted of a crime or any violation of the New York State Penal Law.

17. A federal background check of Plaintiff through the FBI/NICS (National Instant Background Check System) in connection with the purchase of a firearm from an FFL (federal firearm licensee), would result in a "Proceed", meaning that Plaintiff would be approved by NICS to purchase handguns, rifles, and shotguns.

18. No event or condition in Plaintiff's life has resulted in the disqualification of his preexisting right to possess and/or carry firearms.

19. The only barrier to Plaintiff's possession of firearms is the City's unbridled discretion to deny firearms licenses under the "moral character" language of 38 RCNY 3-03 and 5-10, the City's enforcement of subsections (a), (e), (h) and (n) of 38 RCNY 3-03 and 5-10, and the License Division's arbitrary classification of Plaintiff as "both dangerous and not law-abiding," as explained further below.

20. While some of the factors used to determine moral character are 'objective,' the information considered under the challenged subsections is neither material to a morality assessment nor part of the *sui generis* events that historically resulted in the deprivation of Second Amendment rights.

***Plaintiff's 2018 and 2019 Applications to the License Division***

21. In 2018, Plaintiff applied to the License Division for a permit to possess rifles and shotguns in his home for all lawful purposes, including self-defense.

22. In 2019, Plaintiff applied to the License Division for a permit to possess handguns in his home for self-protection for all lawful purposes, including self-defense.

23. The License Division denied both of Plaintiff's applications. Plaintiff timely filed an internal appeal with the License Division, which was also denied.

24. The License Division relied on the following regulations to deny Plaintiff's R/S License application: New York City Administrative Code 10-303(a)(2) and (a)(9), and 38 RCNY 3-03 (a), (e), (h), and (n).

25. The License Division relied on the following regulations to deny Plaintiff's Handgun License: New York City Administrative Code 10-303(a)(2) and (a)(9), and 38 RCNY 5-10 (a), (e), (h), and (n).

**Plaintiff Commences Litigation ("Srour I")**

26. Plaintiff filed an action against New York City in the Federal District Court for the Southern District of New York, entitled *Srour v. New York City*, 22 Civ. 003 [*Srour I*] for violations of his Second Amendment rights.

27. While *Srour I* was litigated, the Supreme Court issued its opinion in *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022). The parties proceeded to summary judgment.

28. On December 16, 2022, the City amended its firearm regulations, including 38 RCNY 3-03 and 38 RCNY 5-10.

29. On October 24, 2023, the district court granted, in part, Plaintiff's motion for summary judgment, including his prayers for a declaratory judgment and the permanent injunction

of NYC Admin. Code 10-303(a)(2) and (a)(9).[2] See, *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2023 WL 7005172, at *10 (S.D.N.Y. Oct. 24, 2023).

30. On October 25, 2023, the City filed a Notice of Interlocutory Appeal [ECF 25] and moved for a stay of this Court's Order pending interlocutory appeal [ECF 45], which was opposed by Plaintiff [ECF 48] and denied by the Court. *Srour v. New York City*, No. 22 CIV. 3 (JPC), 2023 WL 7091903, at *1 (S.D.N.Y. Oct. 26, 2023) (denying motion but continuing temporary stay through 11:59 p.m. on October 30, 2023).

***Plaintiff Reapplies For R/S License and Handgun Licenses (Premise & Concealed Carry)***

31. On October 26, 2023, Plaintiff filed applications with the License Division for a R/S License and a Handgun License (Premise) through the NYPD online portal. [see, attached Declaration of Joseph Srour at Ex. 1].

32. On November 6, 2023, Plaintiff filed an application with the License Division to obtain a Concealed Carry handgun license, having successfully completed the New York State-required 18-hour concealed carry training course on November 5, 2023.

33. Plaintiff is subject to the City's enforcement of 38 RCNY 3-03 and 38 RCNY 5-10, as amended.[3]

34. The events underlying the License Division's denial of Plaintiff's previous applications have not changed[4] – nor can they. Plaintiff still has a history of two arrests over 27 years ago, each having been dismissed and sealed; a driving history with violations pre-dating 2001 – over 22 years ago; and two summonses for navigational law violations in 2012 and 2015.

---

[2] Plaintiff's prayer for equitable relief was denied as to 38 RCNY 3-03 and 38 RCNY 5-10. Because those regulations were amended by the City, the Court determined that Srour "has not been denied permission to possess firearms pursuant to a City official's application of the current version of either Section 3-03 or Section 5-10." *Srour*, at *11.
[3] Plaintiff is also subject to the enforcement of NYC Admin. Code § 10-303(a)(2) and (a)(9) and will continue to be subject to such provisions until the stay of this Court's permanent injunction expires.
[4] 22 Civ. 3 at ECF 27.

35.     There is no likelihood that Plaintiff's pending license applications will be approved by the License Division; his applications are futile.

36.     There is an absolute and permanent bar to Plaintiff's ability to possess or carry any type of firearm for self-defense in New York City.

37.     For one, the License Division under Ms. Berkovich's direction continues to believe that "Plaintiff is both 'dangerous' and not law-abiding," as it did under the direction of former its Director, Jonathan David. [See, *Srour I* Dkt. Sheet, City's October 25, 2023 letter motion for stay pending appeal [ECF 45, p. 3 n. 3] ("Regardless, ***the License Division*** believes that Plaintiff is ***both 'dangerous' and not law-abiding***." (emphasis added)].

38.     The City's motion for a stay did not assert that the ***City*** believes Plaintiff to be "both dangerous and not law-abiding" – it specifically attributed that finding to "the License Division." *Id.*

39.     The City's admission reveals a policy and procedure within the License Division directed at Plaintiff personally -- a malicious, and wanton policy by Ms. Berkovich, deliberate indifference to Plaintiff's Second Amendment rights, and an intention to oppress and prevent the exercise thereof.

40.     The License Division's predetermined bias against Plaintiff forecloses any possibility that his pending applications will be approved. Plaintiff cannot change his past – and Plaintiff's past is the ***only*** criterion relied on by the License Division – then, and now.

41.     In the five years since Plaintiff's original application, the City has come forward with nothing more than stale traffic offenses and false arrest to support branding Plaintiff as unfit to exercise the fundamental right of self-preservation.

42. Even if the City attempts to 'walk back' its public admission that the "License Division believes" that Plaintiff is unfit to possess firearms because he "***is both 'dangerous' and not law-abiding***," enforcement of the challenged regulations will inevitably cause Plaintiff's applications to be denied, as they were previously.[5]

43. The December 2022 Amendments to 38 RCNY 3-03 and 5-10 yielded <u>no change</u> to subs. (a), (e), and (h).

44. Plaintiff has still "been arrested…for a crime or violation…in any federal state or local jurisdiction," which is grounds for denial under 3-03(a) and 5-10(a).

45. Plaintiff still has "a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles," which are grounds for denial under 3-03(h) and 5-10(h).

46. Plaintiff still must "disclose his complete arrest history, including sealed arrests,"[6] which 'tees up' the License Division's enforcement of sub. (a) to deny Plaintiff's current applications, as it did before.

47. Sub. (n) still allows applications to be denied for "an unwillingness to abide by the law, a lack of candor towards lawful authorities, [and] a lack of concern for the safety of oneself and/or other persons and/or for public safety…" – all vague, undefined, and broadly discretionary terms.

---

[5] A retraction of the City's statement at this point would mean either that the statement was false and only advanced in an attempt to fortify an anemic appeal or that, having realized the repercussions of exposing their unwavering opinion of Plaintiff, the City is scrambling to limit the fallout.

[6] Sub. (e) is also a backdoor means to deny a license. State law requires every license applicant to be fingerprinted and investigated through the FBI and New York State databases to identify the existence of prohibiting information. Penal Law § 400.00(4). No account is taken of unintentional and/or immaterial omissions.

48. Unlike the amendment to 3-03(n), 5-10(n) does not allow for a consideration of "all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings" in the context of a handgun license."

49. The City's disparate treatment of handguns and long guns -- all weapons in "common use" for lawful purposes[7] -- is further evidence of the arbitrariness permeating the City's licensing scheme.

50. The denial of Plaintiff's applications is *certain*. Words may have been moved around, added and/or removed from 3-03 and 5-10 in the amendment process, but there is no substantive difference between the pre- and post-amendment regulations.

51. Plaintiff is suffering actual harm from the enforcement of regulations posing an ***absolute barrier*** to the exercise of his preexisting and presumptively protected right to possess and carry firearms for self-defense.

52. In addition to the presumed harm arising from the loss of constitutional rights, Plaintiff continues to experience the psychological weight of being arbitrarily stripped of the ability to protect and defend himself, his home, and his family – a heaviness magnified by recent events domestically and in the Middle East.

53. Plaintiff is an Israeli-born American, and Jewish. As such, he is a member of a group of individuals that has historically been targeted for attack and extermination worldwide. The anti-Semitic and anti-Israel demonstrations in New York City, fueled by national and international events, amplify Plaintiff's existing feelings of vulnerability because, but for the City's regulations, Plaintiff would be armed and able to effectively defend himself, his home, and his family – and that ability brings a peace of mind that cannot be quantified.

---

[7] *Bruen*, at 2134; *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curium) (stun guns).

54. In addition to the presumed and irreparable harm from the aforementioned constitutional violations, Defendants' conduct has caused Plaintiff to continue to suffer, *inter alia*, stress, worry, and the physical manifestations of the same.

> "The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary." *Grace*, 187 F.Supp.3d at 150. Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury."

*Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (granting preliminary injunction).

## CONSTITUTIONAL AND LEGAL FRAMWORK

### *The Second Amendment*

55. "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend II. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. *McDonald v. Chicago*, 561 U.S. 742 (2010).

56. The Second Amendment codified the *preexisting*, guaranteed, and individual right to possess and carry weapons in case of confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied); accord *Bruen*, at 2127.

57. The "central component" of that right is "individual self-defense." *Bruen,* at 2127 quoting, *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (plurality) (quoting *Heller*, 554 U.S. at 599).

58. The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty." *McDonald*, at 768.

### *The Test For Second Amendment Challenges Under* <u>Bruen</u>

59. When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 142 S. Ct. at 2126 (citation omitted).

60. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. *Ibid.*

61. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Ibid*.

62. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Ibid*.

63. Here, Plaintiff's proposed conduct -- possessing and carrying firearms for self-defense – is covered by the plain text of the Second Amendment. See, *Srour I*, at *12 ("The Court therefore determines that the conduct at issue here—the possession of firearms for lawful purposes—is covered by the plain text of the Second Amendment."); accord, *Heller*, at 592 (defining the plain text of the Second Amendment as "guarantee[ing] the individual right to possess and carry weapons in case of confrontation"); *Bruen*, at 2134 (expressing "little difficulty" concluding that "the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for self-defense.").

64. To prevail, the City must justify its regulations "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2130.

65. *Only* then can the Court conclude that Plaintiff's "conduct falls outside the Second Amendment's 'unqualified command'." *Bruen*, at 2126, 2129-30.

66. No set of circumstances exist under which the regulations challenged herein would be valid; the laws are unconstitutional in all of their applications, including as they are applied to Plaintiff.

67. Plaintiff is suffering actual and irreparable injury as a direct result of Defendants' enforcement of **(i)** the "moral character" requirements of 38 RCNY 3-03 and 38 RCNY 5-10; **(ii)** subsections (a), (e), (h) and (n) of 38 RCNY 3-03 and 5-10; and **(iii)** the permanent categorization of Plaintiff as "both 'dangerous' and not law-abiding," and he requests the preliminary and permanent injunction thereof.

68. Defendants deny the allegations stated herein.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983
## [38 RCNY 3-03]

69. Repeats and realleges paragraphs "1" through and including " 68" as if set forth in their entirety herein.

70. Facially and as applied to Plaintiff, the "moral character" requirement of 38 RCNY 3-03 violates the Second Amendment as applied to the states through the Fourteenth Amendment.

71. Facially and as applied to Plaintiff, subsections (a), (e), (h), and (n) of 38 RCNY 3-03, individually and collectively violate the Second Amendment as applied to the states through the Fourteenth Amendment.

## COUNT II
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983
## [38 RCNY 5-10]

72. Repeats and realleges paragraphs "1" through and including "71" as if set forth in their entirety herein.

73. Facially and as applied to Plaintiff, the "moral character" requirement of 38 RCNY 5-10 violates the Second Amendment as applied to the states through the Fourteenth Amendment.

74. Facially and as applied to Plaintiff, subsections (a), (e), (h), and (n) of 38 RCNY 5-10, individually and collectively violate the Second Amendment as applied to the states through the Fourteenth Amendment.

## COUNT III
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983
## [Policy Against Plaintiff]

75. Repeats and realleges paragraphs "1" through and including " 74" as if set forth in their entirety herein.

76. The policy, practice, and procedure of the New York City, New York of branding Plaintiff "both 'dangerous' and not law-abiding," as enforced by the NYPD License Division and/or defendant Berkovich, violates Plaintiff's Second Amendment rights as applied to the states through the Fourteenth Amendment.

## COUNT IV
## *MONELL* LIABILITY

77. Repeats and realleges paragraphs "1" through and including "76" as if set forth in their entirety herein.

78. Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policies described herein against Plaintiff, New York City, New York is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436

U.S. 658, 98 S.Ct. 2018 (1978) for the violations of his Constitutional Rights as plead herein, 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendants as follows:

- A judicial declaration that the "good moral character" requirement of 38 RCNY 3-03 and 5-10 is unconstitutional, facially and as applied to Plaintiff;

- A judicial declaration that subsections (a), (e), (h), and (n) of 38 RCNY 3-03 and 38 RCNY 5-10 are unconstitutional, facially and as applied to Plaintiff;

- A judicial declaration that the New York City License Division's/Ms. Berkovich's permanent classification of Plaintiff as "both 'dangerous' and not law-abiding" violates his Second Amendment rights;

- An Order preliminarily and permanently enjoining the defendants, their officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from enforcing and implementing the "good moral character" provision of 38 RCNY 3-03 and 38 RCNY 5-10;

- An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction, from enforcing subsections (a), (e), (h), and (n) of 38 RCNY 3-03 and 38 RCNY 5-10;

- An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who

receive actual notice of the injunction, from classifying Plaintiff as a "dangerous" individual and/or as "not law-abiding";

- Nominal damages to Plaintiff;

- Compensatory damages to Plaintiff;

- Punitive damages as against defendant Berkovich;

- Reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. §1988 and any other applicable law; and

- Such further, alternative, and different relief as to this Court seems just, equitable, and proper.

Respectfully submitted,

Dated: November 8, 2023
     Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

_____/s/_____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com
(914) 367-0090 (t)
(888) 763-9761 (f)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOSEPH SROUR,

                Plaintiff,          23 Civ.9489 (JPC)

    -against-

                               **DECLARATION OF**
                               **JOSEPH SROUR**

NEW YORK CITY, New York,
EDWARD A. CABAN, in his Official
Capacity, and NICOLE BERKOVICH,
Individually,

                Defendants.
----------------------------------------------------------x

    JOSEPH SROUR, declares pursuant to 28 U.S.C. §1746 that:

    1.    I am the plaintiff in the above-captioned matter. I am over the age of 18 and a resident of New York City, New York. I submit this Declaration in support of the attached First Amended Verified Complaint and in continued support of the pending proposed Order to Show Cause for a Preliminary Injunction. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

    2.    I have read the First Amended Verified Complaint drafted by my attorney in this matter to be filed in the Federal District Court of the Southern District of New York, *Srour II* (the "FAC"). The factual information alleged in the "Material Facts" section of the FAC is true to my personal knowledge except to the extent alleged upon information and belief, and as to the latter I believe the information to be true.

    3.    A true and accurate copy of the receipts emailed to me from New York City in connection with my October 26, 2023 applications for a Rifle/Shotgun License and Handgun License (Premises) are attached hereto as Exhibit 1.

1

4. On November 6, 2023 I filed an application with the License Division for a concealed carry handgun permit, Application # CB2023021990.

5. Based on New York City's continuing violation of my right to possess firearms for self-defense, I request that this Court grant our motion for a preliminary injunction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 8, 2023

_____
Joseph Srour

# EXHIBIT 1

**Joey Srour**

From: noreply@finance.nyc.gov
Sent: Thursday, October 26, 2023 6:14 PM
To: joey@dreamonme.com
Subject: Payment Receipt #CPY029735385 from NYC CityPay

NYC CityPay

SHOTGUN/RIFLE

## Thank you for your payment.

| | |
|---|---|
| **Payment Amount:** | $140.00 |
| **Receipt Number:** | CPY029735385 |
| **Transaction Date:** | 10/26/2023 6:13:33 PM |
| **Payment Type:** | CHECK *****8165 |

Thank you for your order. This e-mail will serve as confirmation that your payment was received. Please do not reply to this e-mail.

Please keep this for your records.

Rifle/Shotgun Permit Application Fee                                         $140.00

**Payment Amount: $140.00**

1

Case 1:23-cv-09489-PCD  Document 1-4  Filed 10/29/23  Page 20 of 20

**Joey Srour**

---

| | |
|---|---|
| **From:** | noreply@finance.nyc.gov |
| **Sent:** | Thursday, October 26, 2023 5:49 PM |
| **To:** | joey@dreamonme.com |
| **Subject:** | Payment Receipt #CPY029734840 from NYC CityPay |



*Premise Residence*

# Thank you for your payment.

| | |
|---|---|
| **Payment Amount:** | $340.00 |
| **Receipt Number:** | CPY029734840 |
| **Transaction Date:** | 10/26/2023 5:49:27 PM |
| **Payment Type:** | CHECK *****8165 |

Thank you for your order. This e-mail will serve as confirmation that your payment was received. Please do not reply to this e-mail.

Please keep this for your records.

Handgun License Application Fee         $340.00

**Payment Amount: $340.00**

1