Index No. 23-CV-9489 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH SROUR,

                                                                Plaintiff,

-against-

NEW YORK CITY; JESSICA TISCH, in her Official
Capacity, and NICOLE BERKOVICH, Individually,

                                                                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT

### MURIEL GOODE-TRUFANT

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 5-143
New York, New York 10007

*Of Counsel:*    Aimee K. Lulich
*Tel:*  (212) 356-2369

Matter No. 2023-100497

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ i

RELEVANT STATUTORY AND REGULATORY AUTHORITY.......................................... 2

STATEMENT OF FACTS ............................................................................................ 5

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT

       POINT I

              THE COMPLAINT IS MOOT ................................................................... 8

       POINT II

              PLAINTIFF HAS NOT STATED A CLAIM FOR
              RELIEF AS AGAINST NICOLE BERKOVICH .................................... 13

       POINT III

              PLAINTIFF HAS NOT STATED A CLAIM FOR
              DAMAGES.............................................................................................. 15

CONCLUSION.......................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Pages**

Antonyuk v. James,
    2024 U.S. App. LEXIS 26958 (2d Cir. Oct. 24, 2024)............................................15

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011)........................................................................................14

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)....................................................................................8, 13

Bangs v. Smith,
    84 F.4th 87 (2d Cir. 2023) ............................................................................14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................8

Campbell v. Greisberger,
    80 F.3d 703, 706 (2d Cir. 1996)..................................................................9, 11

Carey v. Piphus,
    435 U.S. 247, 266 (1978)...............................................................................16

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995)............................................................................13

Conn. Citizens Def. League, Inc. v. Thody,
    2024 U.S. App. LEXIS 1056 (2d Cir. 2024) ...............................................8, 15

Davidson v. Flynn,
    32 F.3d 27 (2d Cir. 1994) ...............................................................................7

Doninger v. Niehoff,
    642 F.3d 334 (2d Cir. 2011)..........................................................................14

Fisher v. United States Atty.,
    722 F.App'x 40 (2d Cir. 2018) ........................................................................9

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,
    528 U.S. 167 (2000)........................................................................................9

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1988)............................................................................7

Granite State Outdoor Adver. v. Town of Orange,
    303 F.3d 450, 451 (2d Cir. 2002)................................................................11, 12

Hall v. Beals,
    396 U.S. 45 (1969)....................................................................................................9

Kerman v. City of New York
    374 F.3d 93, 135 (2d Cir. 2004)............................................................................15

Knox v. Service Employees International Union, Local 1000,
    567 U.S. 298, 307 (2012).........................................................................................9

Libertarian Party v. Cuomo,
    970 F.3d 106 (2d Cir. 2020)..................................................................................10

Liner v. Jafco,
    375 U.S. 301 (1964).................................................................................................9

Madonna v. United States,
    878 F.2d 62 (2d Cir. 1989)......................................................................................8

Memphis Cmty Sch. Dist. v. Stachura,
    477 U.S. 299, 306 (1986).......................................................................................15

New York State Rifle & Pistol Ass'n, Inc. v. Bruen,
    142 S. Ct. 2111 (2022)....................................................................................10, 11

Owens v. Okure,
    488 U.S. 235 (1989)...............................................................................................10

Papineau v. Parmley,
    465 F.3d 46 (2d Cir. 2006)....................................................................................14

Sosna v. Iowa,
    419 U.S. 393 (1975)...............................................................................................12

Srour v. New York City,
    No. 23-7549-CV, 117 F.4th 72 (2d Cir. 2024) .................................5, 7, 9, 10, 11, 13

Srour v. New York City,
    No. 22-CV-0003 (JPC), 699 F.Supp. 3d 258 (S.D.N.Y. Oct. 24, 2023)...................5

Super Tire Engineering Co. v. McCorkle,
    416 U.S. 115, 125-126 (1974) ...............................................................................12

Susan B. Anthony List v. Driehaus,
    573 U.S. 149 (2014)...............................................................................................10

Weinstein v. Bradford,
    423 U.S. 147, 149 (1975).......................................................................................12

Wilson v. Layne,
 526 U.S. 603 (1999)........................................................................................14

**Statutes**

38 RCNY § 3-03 .........................................................................3, 6, 10, 11, 14, 15

38 RCNY § 3-03(a).....................................................................................5, 6

38 RCNY § 3-03(e).....................................................................................5, 6

38 RCNY § 3-03(h).....................................................................................5, 6

38 RCNY § 3-03(n).....................................................................................5, 6

38 RCNY § 5-02 .........................................................................................2, 11

38 RCNY § 5-10 ..........................................................................3, 5, 6, 11, 14, 15

38 RCNY § 5-10(a).....................................................................................5, 6

38 RCNY § 5-10(e)..................................................................................5, 6, 11

38 RCNY § 5-10(h).....................................................................................5, 6

38 RCNY § 5-10(n).....................................................................................5, 6

N.Y.C. Admin. Code § 10-303(a)(2) .........................................................2, 5, 7

N.Y. Penal Law § 400.00(1) ...........................................................................3

N.Y. Penal Law § 400.00(1)(b) .......................................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JOSEPH SROUR,

                                 Plaintiff,

        -against-                          23-CV-9489 (JPC)

NEW YORK CITY; JESSICA TISCH[1], in her Official
Capacity, and NICOLE BERKOVICH, Individually,

                                 Defendants.
------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

        Defendants City of New York ("City"), New York City Police Department ("NYPD") Commissioner Jessica Tisch, and Nicole Berkovich, by their attorney Muriel Goode-Trufant, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff brought this action seeking declaratory and injunctive relief, and damages, on the assumption that his newly-filed applications for a handgun license and rifle/shotgun permit would be denied. In fact, they were granted and plaintiff was issued a handgun license that permits him to possess and carry a handgun concealed in the City, and a rifle/shotgun permit that permits him to possess rifle(s) or shotgun(s). Because plaintiff can obtain no effectual relief from this action, and because plaintiff has not pled any facts to support a violation of any of his rights in this action, the Complaint should be dismissed.

---

[1] As of November 25, 2024, Jessica Tisch is the Commissioner of the NYPD, and, thus, is substituted as a defendant in her official capacity in the place of the former NYPD Commissioner pursuant to Fed. R. Civ. P. 25(d).

## RELEVANT STATUTORY AND REGULATORY AUTHORITY

New York Penal Law (Pen. Law) § 400.00(1)(b), which applies to handgun licenses, directs, <u>inter</u> <u>alia</u>:

> No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true.  No license shall be issued or renewed except for an applicant…(b) of good moral character…"

New York City law adopted the "good moral character" requirement for rifle/shotgun licenses in New York City Administrative Code § 10-303(a)(2).  The City of New York ("City") enforces federal and state law regarding firearm licenses via the regulations set forth in Title 38 of the Rules of the City of New York ("RCNY").  Specifically, with regard to handgun licenses, 38 RCNY § 5-02 (as amended Dec. 16, 2022)  directs:

> The requirements for the issuance of a Premises License are listed below, which are in addition to any other bases for disqualification pursuant to federal, state, and local law. The license application shall be investigated, including a review of the circumstances relevant to the information provided in the application. During the pendency of the application, the applicant shall notify the License Division of any necessary correction to or modification of the information provided in the original application, or any change in their status or circumstances, which may be relevant to the application. The applicant shall:
>
> (a)    Be of good moral character, which shall mean having the essential character, temperament, and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or another. For the purposes of the preceding sentence, the use of force that is reasonably necessary to protect oneself or others shall not be construed as endangering oneself or others;
>
> ***

38 RCNY § 5-02 and § 5-02(a).

Title 38 RCNY § 5-10 (as amended Dec. 16, 2022) defines "good moral character" for the purposes of determining handgun licenses, in pertinent part, as follows:

> In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a handgun license may be denied where it is determined that an applicant lacks good moral character, pursuant to New York State Penal Law § 400.00 (1). Such a determination shall be made based upon consideration of the following factors
>
> (a)  The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.
>
> ***
>
> (e)  The applicant made a false statement on their application, or failed to disclose their complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a license to possess a gun.
>
> ***
>
> (h)  The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.
>
> ***
>
> (n)  Other information that demonstrates the lack of good moral character, including but not limited to an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or an inability to maintain handgun possession in a manner that is safe to oneself or others.

Similarly, with regard to applications for rifle/shotgun permits, 38 RCNY § 3-03 (as amended Dec. 16, 2022) defines the "good moral character" provision in the Pen. Law as follows:

In addition to other bases for disqualification pursuant to federal, state, and local law and this chapter, an application for a rifle/shotgun permit may be denied where it is determined that an applicant lacks good moral character. For the purposes of this chapter, "good moral character" means having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others. For the purposes of the preceding sentence, the use of force that is reasonably necessary to protect oneself or others shall not be construed as endangering oneself or others. Such a determination shall be made based upon consideration of the following factors:

(a)     The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.

*** 

(e)     The applicant made a false statement on her/his application, or failed to disclose her/his complete arrest history, including sealed arrests. Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a permit to possess a gun.

*** 

(h)     The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.

*** 

(n)     Other information that demonstrates a lack of good moral character, including but not limited to an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, or an inability to maintain rifle/shotgun possession in a manner that is safe to oneself or others. In evaluating incidents or circumstances pursuant to this section, the License Division shall consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings.

## STATEMENT OF FACTS

The 2018 Applications and Srour 1

In 2018, plaintiff filed applications with the NYPD License Division seeking a license permitting him to possess a handgun in his home[2] ("Premises License") and a Rifle/Shotgun Permit.[3]  In 2019, the NYPD License Division denied both applications. Thereafter, plaintiff commenced an action challenging New York City Administrative Code ("AC") § 10-303(a)(2) & (9) which provide that an applicant for a rifle/shotgun license is not entitled to a license if such person, inter alia, "is not of good moral character" or "good cause exists for the denial" of the application. See Complaint, Srour v. City of New York, No. 22-CV-0003 (JPC) ("Srour 1"), at ECF Document ("Doc.") Number ("No.") 1.  Plaintiff also challenged the provisions directing that the NYPD consider an applicant's arrest history (Title 38 of the Rules of the City of New York ("RCNY") §§ 3-303(a) & 5-10(a)), lack of candor (38 RCNY §§ 3-303(e) & (n) and 5-10(e) & (n)), and driving history (38 RCNY §§ 3-303(h) & 5-10(h)) when determining an application for a firearm license.  By Decision and Order dated October 24, 2023, this Court granted plaintiff's summary judgment motion with regard to AC § 10-303(a)(2) & (9) and enjoined these provisions' enforcement.  Srour v. New York City, ("Srour 1") 699 F. Supp. 3d 258, 285, 289 (S.D.N.Y. 2023), vacated in part, 117 F.4th 72 (2024).  Defendants filed an interlocutory appeal of the portion of the Decision and Order enjoining AC § 10-303(a)(2), and a temporary stay of the injunction was granted pending a decision on appeal.  See Srour v. New York City, ("Srour 1") 117 F.4th 72 (2d Cir. 2024).

---

[2] Pursuant to 38 RCNY § 5-01, a handgun is a pistol or revolver.  Plaintiff's use of the term "handgun license" appears to  refer to his application for a "Premises Residence License" as defined in 38 RCNY § 5-01(a).

[3] The terms "Rifle," "Shotgun," and "Rifle/Shotgun Permit" are defined in 38 RCNY § 1-02.

The 2023 Applications and the Instant Action ("Srour 2")

  While the appeal in Srour 1 was pending, plaintiff filed with the NYPD License Division applications for a Premises License and a Rifle/Shotgun Permit on October 26, 2023 and an application for a Carry License[4] on November 6, 2023. See First Amended Complaint ("FAC"), ECF Docket Entry No. 14, at ¶¶ 31-32. That same day, Plaintiff filed the instant action ("Srour 2") against the City of New York, then-NYPD Commissioner Edward Caban, in his official capacity, and NYPD License Division Director Nicole Berkovich, in her individual capacity, in which Plaintiff claimed that his rights *would be violated* if the License Division were to deny the newly-filed firearm applications. See Complaint, ECF Docket Entry No. 1. Specifically, plaintiff again challenged the "good moral character" requirement in 38 RCNY §§ 3-03 and 5-10, and the factors for consideration in determining firearm licenses set forth in 38 RCNY §§ 3-03(a), (e), (h), and (n) and 38 RCNY §§ 5-10(a), (e), (h), and (n), alleging that he believed his firearm license applications would be denied pursuant to these regulations because his 2018 Applications were denied pursuant to, inter alia, the prior versions of these regulations and laws. See Complaint. Plaintiff also filed a motion for preliminary injunction, which was denied by Order dated November 30, 2023, because Plaintiff had not established a likelihood of success on the merits with respect to his standing to bring the action. See Order, Doc. No. 19.

  Defendants moved to dismiss the Srour 2 Complaint on the grounds, inter alia, that plaintiff lacked standing to challenge these regulations because there had been no determinations of the applications, and, thus, no injury-in-fact, and because the Complaint failed to state a claim for relief as against Nicole Berkovich in her personal capacity. See First Motion to Dismiss, ECF Docket Entries Nos. 33-34.

---

[4] A Carry License is a type of handgun license defined in 38 RCNY § 5-01(b) that allows a licensee to, inter alia, carry a concealed handgun within the City.

While the First Motion to Dismiss was pending, plaintiff's 2023 Applications were granted by the NYPD License Division on March 21, 2024, and plaintiff now holds a Rifle/Shotgun Permit and a Carry License[5].

The Srour 1 Decision Granting Injunctive and Declaratory Relief as to AC 10-303(a)(2) is Vacated as Moot

By Opinion dated September 9, 2024, the Second Circuit Court of Appeals found that plaintiff's claims for injunctive and declaratory relief regarding AC § 10-303(a)(2) were moot because plaintiff was issued firearm licenses in March of 2024 and, thus, he could not receive any effectual relief.  Srour 1, 117 F.4th at *81-82.  The decision enjoining AC § 10-303(a)(2) and declaring it to be unconstitutional was vacated and the interlocutory appeal was dismissed as moot.  Id. at *86-87.

The Second Motion to Dismiss

By Order dated November 25, 2024, this Court denied, without prejudice, defendant's first motion to dismiss and granted leave to file a second motion to dismiss in light of the Second Circuit's Opinion dismissing the Srour 1 appeal as moot.  Defendants now move to dismiss the Complaint as moot, and because plaintiff failed to state a claim as against Nicole Berkovich in her individual capacity and failed to state a claim for damages.

## **STANDARD OF REVIEW**

When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1988); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir.

---

[5] A Carry License also permits the holder to possess handguns within the home and, thus, the Carry License also satisfies the approved Premises License application.  See 38 RCNY § 5-01(a) & (b).

1994) (citing <u>Madonna v. United States</u>, 878 F.2d 62, 65 (2d Cir. 1989)).  A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citations and quotations omitted).

The Supreme Court in <u>Iqbal</u> set forth a "two-pronged" approach for analyzing a motion to dismiss. <u>Id.</u> First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>  Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations… plausibly give rise to an entitlement to relief." <u>Id.</u> at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.")

## ARGUMENT

### POINT I

### <u>THE COMPLAINT IS MOOT</u>

Petitioner's 2023 Applications for a Premises License, a Carry License, and a Rifle/Shotgun Permit were granted, and petitioner now holds a Carry License and Rifle/Shotgun Permit.  Accordingly, petitioner can receive no effectual relief from the instant action, and it should be dismissed as moot.

The mootness doctrine ensures that a litigant's interest in the outcome of a case remains "throughout the life of the lawsuit." <u>Connecticut Citizens Defense League, Inc. v Lamont</u>, 6 F.4th 439, 444 (2d Cir. 2021)  It is black-letter law that "[a] Court may not proceed to hear an action if, subsequent to its initiation, the dispute loses 'its character as a present, live controversy of the kind that must exist if [the Court is] to avoid advisory opinions on abstract

propositions of law.'" <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.</u>, 528 U.S. 167, 212-13 (2000) (quoting <u>Hall v. Beals</u>, 396 U.S. 45, 48 (1969) (per curiam)). "A case becomes moot, at any stage of litigation, when there is no longer a live case or controversy for a court to decide, such as when the plaintiff has already received the relief sought." <u>Fisher v. United States Atty.</u>, 722 F. App'x 40, 41 (2d Cir. 2018) (<u>citing</u> U.S. Const. Art. III; <u>Liner v. Jafco, Inc.</u>, 375 U.S. 301, 306 (1964)).

Here, plaintiff's alleged injury was the potential denial of his applications for handgun licenses and Rifle/Shotgun Permit and, thus, the potential inability to possess firearms in New York City.  <u>See</u> Complaint at Wherefore Clause; FAC at Wherefore Clause.  However, plaintiff's applications were granted "and it is therefore 'impossible for a court to grant [him] any effectual [prospective] relief.'" <u>Srour 1</u>, 117 F.4th at 81 (quoting <u>Knox v. Service Employees International Union, Local 1000</u>, 567 U.S. 298, 307 (2012).  Plaintiff has no interest in declaratory or injunctive relief with regard to regulations from which he has incurred no injury, and his claims are moot.

Further, the instant claims do not fall within the voluntary cessation exception of the mootness doctrine.  Notably, there was no "voluntary cessation of allegedly illegal activities" or "voluntary cessation of a disputed action" in the instant matter because plaintiff had not been injured by the challenged regulations and there was no allegedly unlawful conduct or disputed action to reverse. <u>See</u>, <u>e.g.</u>, <u>Srour 1</u>, 117 F.4th at 82; <u>Campbell v. Greisberger</u>, 80 F.3d 703, 706 (2d Cir. 1996).  Rather, plaintiff filed the instant action at the same time as he submitted his applications for firearm permits, before any determination had been rendered, speculating that he would be injured at some point in the future. <u>See</u> FAC. The License Division had not acted on plaintiff's applications at the time this action was filed, and, thus, there was no conduct to change

or cease "voluntarily" or otherwise.  Nor did the License Division act on its own initiative to issue plaintiff's firearm licenses.  Indeed, the Second Circuit recognized in Srour 1 that the 2023 determinations granting plaintiff's firearm applications were initiated by plaintiff and not defendants.  Srour 1, 117 F.4th at *84 ("Once Srour reapplied for a permit, the City had legal obligations to him beyond his role as a litigant in this suit.  It was required to process his application… under the new regulations…")  There was no "voluntary cessation" because *plaintiff* filed new applications for firearm licenses, and then filed the instant action before any determination was rendered as to the new applications. Thus, there was no disputed government action to change or cease.

Further, plaintiff's reliance on the denials of the 2018 Applications[6] fails because those determinations were not made pursuant to the *current* regulations governing firearm licensing nor plaintiff's *current* circumstances and applications.  See, e.g., Libertarian Party v. Cuomo, 970 F.3d 106, 116 (2d Cir. 2020), abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022); Susan B. Anthony List v. Driehaus, 573 U.S. 149, 161-162 (2014).  Notably, it had been over four years since the determinations on the 2018 applications were issued.  This is significant because, when weighing factors like arrests and traffic violations, the License Division is directed to consider, inter alia, how long ago the events took place. 38 RCNY § 3-03(n).  Further, in the 2018 Applications, plaintiff stated that he had not been arrested or prosecuted, but the NYPD's application investigation found that plaintiff had been arrested and prosecuted on several prior occasions.  Srour 1 Complaint at ¶¶ 91-92 & 130.  As a result, one of the factors leading to the denials of the 2018 Applications was a lack of

---

[6] Plaintiff cannot challenge the denials of the 2018 Applications herein because this action was filed after the statute of limitations had run. See, e.g., Owens v. Okure, 488 U.S. 235 (1989). Plaintiff purports to describe the denials of the 2018 Applications in this action in support of his speculation that the 2023 Applications would also be denied.

candor for failing to disclose these arrests under 38 RCNY §§ 3-303(e) and 5-10(e). In the instant Complaint, Plaintiff appears to state that he disclosed all arrests and violations on the 2023 Applications, which represents a material difference with regard to an assessment of the plaintiff's candor compared to the 2018 Applications. Additionally, the legal analysis and relevant State and local laws were amended between the denial of the 2018 Applications and the submission of the 2023 Applications, including 38 RCNY §§ 3-03, 5-02 and 5-10. The 2023 Applications were reviewed pursuant to the laws and statutes as amended in December of 2022 following the decision in Bruen, 587 U.S. 1.

In any event, a "voluntary cessation" argument fails because (1) there is no reasonable expectation that the action will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Granite State Outdoor Adver. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002); Campbell, 80 F.3d at 706. As the Second Circuit held in Srour 1, plaintiff's rifle/shotgun permit is subject to automatic renewal every three years and "there is no evidence to support the contention that his license will not in fact be subject to automatic renewal, as is required by section 10-303(f) of the [AC]." Srour 1, 117 F.4th at * 82. While the Srour 1 appeal did not include claims regarding handgun licenses, there is also no reasonable expectation that plaintiff will be denied a renewal of his handgun license in the future for unconstitutional reasons. As described above, to the extent plaintiff attempts to use the denials of the 2018 Applications as the "disputed conduct" that defendants purportedly voluntarily ceased, the laws and regulations, and the facts and circumstances of plaintiff's applications, are materially different now, and plaintiff, not defendants, triggered the License Division's application review by reapplying in 2023. There is no support for the contention that future applications will be reviewed under prior laws or regulations. Id. ("Srour's October 2023

application was reviewed under the new implementing regulations which defined 'good moral character'… suggesting this application was granted when the previous one was denied due to a change in policy.")

Additionally, it is clear that the determinations granting the 2023 Applications and the issuance of plaintiff's rifle/shotgun permit and carry license have eradicated the effects the alleged violation.  See, e.g., Granite State, 303 F.3d at 451.  Plaintiff has the relief he sought in the Complaint—the ability to lawfully possess firearms in New York City.

Finally, to the extent plaintiff were to argue that this matter is not moot under the "capable of repetition yet avoiding review" exception, this argument fails. This doctrine requires that two elements be satisfied: (1) the duration of the challenged action was too short to be fully litigated prior to cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.  See, e.g., Sosna v. Iowa, 419 U.S. 393 (1975).  Neither element applies here. Indeed, final determinations on firearm licenses are eminently reviewable by courts—whether as Article 78 proceedings in State court or Second Amendment actions in federal court.  Denials are final, written decisions that describe the basis for the determination and which remain in place unless and until plaintiff successfully challenges the determination in court or files new applications. Accordingly, there are no intrinsic time constraints or other barriers to challenging the final determinations. See, e.g., Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (holding that a party had no interest in parole procedures after the party was released from parole supervision, even though the same parole procedures would continue to be implemented in the jurisdiction going forward); Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 125-126 (1974) (finding a state policy of paying unemployment compensation to union members during strikes was capable of repetition yet evading review

because the union bargaining recurred cyclically and "the great majority of economic strikes do not last long enough for complete judicial review of the controversies they engender"). Here, plaintiff's circumstances only changed because he filed new applications for firearm licenses, requiring new determinations to be issued under the new laws and regulations then in place. See FAC at §§ 31-32. "[A] policy change from the government and a representation that, under the current circumstances, the government will not resume the challenged conduct, strongly support that the behavior is not reasonably expected to occur." Srour 1, 117 F.4th at 83 (internal citations omitted).  Further, to the extent plaintiff speculates that he might be arrested or issued violations that will be taken into consideration when reviewing future applications, the "possibility that a party will be prosecuted for violating valid criminal laws" is insufficient to establish a live case or controversy.  Id.  Accordingly, because plaintiff has received the firearm license and permit that he sought, and may legally possess and carry firearms in the City, his requests for declaratory and injunctive relief are moot.

**POINT II**

**PLAINTIFF HAS NOT STATED A CLAIM FOR RELIEF AS AGAINST NICOLE BERKOVICH**

Plaintiff's claim against NYPD License Division Director Nicole Berkovich, in her individual capacity and for punitive damages, fails because plaintiff has not alleged any facts to support her personal involvement in any Constitutional injury as against him. Iqbal, 556 U.S. at 677; Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  "[E]ach Government official… is only liable for his… own misconduct."  Iqbal, 556 U.S at 677.  Here, Ms. Berkovich did not

issue any of the determinations arising from the 2018 Applications,[7] and was not the director of the NYPD License Division at the time they were decided.  Plaintiff merely speculated that, at some point in the future, Ms. Berkovich might be involved in denying his applications for firearm licenses and may do so for some unconstitutional reason.  As described above, this did not happen; plaintiff's applications were granted and he now holds a Carry License and Rifle/Shotgun Permit.  To the extent plaintiff attempts to attribute a statement made by an attorney in Srour 1 regarding plaintiff's 2018 Application determinations to Ms. Berkovich, Ms. Berkovich was not a party to Srour 1 and did not make the statement about which Plaintiff complains.  Indeed, plaintiff has not pled any action by Ms. Berkovich with regard to any of the applications filed by plaintiff for firearm licenses, whether they were filed in 2018 or 2023.  Thus, Ms. Berkovich must be dismissed as a defendant for lack of personal involvement.

Further, to the extent plaintiff may intend to assert that Ms. Berkovich has some liability arising out of the adoption of the current iterations of 38 RCNY §§ 3-03 and 5-10, she would be entitled to qualified immunity.  Qualified immunity shields officials acting in their individual or personal capacity from suits for damages "unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Papineau v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006); Bangs v. Smith, 84 F.4th 87, 96 (2d Cir. 2023) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). A right is clearly-established if: (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful. Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011). If there is no controlling authority, a plaintiff must show "a robust consensus of cases of persuasive authority." Ashcroft

---

[7] And, in any event, plaintiff cannot bring an action for punitive damages arising out of the 2018 Applications outside of the Statute of Limitations.

v. al-Kidd, 563 U.S. 731, 742 (2011) (internal quotation marks and citation omitted).  Here, 38 RCNY §§ 3-03 and 5-10 and their subsections were written to adopt and apply State Law, Antonyuk v. James, 2024 U.S. App. LEXIS 26958 (2d Cir. Oct. 24, 2024), and there is no controlling or persuasive authority to establish that the challenged subsections violate a clearly-established right.  Indeed, the recent decision in Antonyuk found that the "good moral character" requirement does not violate the Second Amendment. Id.; see also Conn. Citizens Def. League, Inc. v. Thody, 2024 U.S. App. LEXIS 1056, *14 (2d Cir. 2024) (holding police officials were entitled to qualified immunity on claim that "excessive" wait times for firearm licenses violated plaintiffs' Second Amendment rights).  Accordingly, in addition to the lack of personal involvement, the claims against Ms. Berkovich must be dismissed because she is entitled to qualified immunity.

## POINT III

### PLAINTIFF  HAS  NOT  STATED  A  CLAIM FOR DAMAGES

Plaintiff cannot maintain a claim for nominal or compensatory damages because he has not pled any injury or deprivation of rights that would entitle him to such relief.  To recover compensatory damages, a plaintiff must show that he suffered a compensable injury. See, e.g., Kerman v. City of New York, 374 F.3d 93, 135 (2d Cir. 2004).  Similarly, nominal damages may be granted to vindicate certain deprivations of absolute rights in the absence of actual injury.  See, e.g., Memphis Cmty Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986).  Here, the Complaint claims only that plaintiff believed his 2023 Applications would be denied and that such denials would be a violation of his Second Amendment rights.  Plaintiff's assumptions were not borne out, and his applications were granted.  In the absence of any allegation that his rights

were violated, he cannot maintain claims for nominal or compensatory damages.  Id.; see also

Carey v. Piphus, 435 U.S. 247, 266 (1978).

## **CONCLUSION**

For the foregoing reasons, defendants request that this Court grant the motion to

dismiss the complaint in its entirety, together with such other and further relief as this Court

deems just and proper.

Dated:          New York, New York
                December 19, 2024

                                MURIEL GOODE-TRUFANT
                                Corporation Counsel of the City of New York
                                *Attorney for Defendants*
                                100 Church Street
                                New York, New York 10007
                                By:_____/S/_____
                                        Aimee K. Lulich

23-CV-9489 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH SROUR,

Plaintiff,

-against-

NEW YORK CITY, New York,
JESSICA TISCH, in her Official
Capacity, and NICOLE BERKOVICH,
Individually,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**

***Muriel Goode-Trufant***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Aimee Lulich*
*Tel:  (212) 356-2369*
*Matter No.:*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ......................................................................................, 2023 ......*

*..................................................................................................... , Esq.*

*Attorney for ...................................................................................................*