UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSEPH SROUR,

                Plaintiff,          23 Civ. 9489 (JPC)

    -against-

NEW YORK CITY, New York,
EDWARD A. CABAN, in his Official
Capacity, and NICOLE BERKOVICH,
Individually,

                Defendants.
---------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiff*
**2 Overhill Road, Suite 400
Scarsdale, New York 10583**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

Standard for Motion to Dismiss ............................................................................................... 2

I.  DEFENDANTS' VOLUNTARY ISSUANCE OF PREMISE AND CONCEALED CARRY HANDGUN LICENSES TO PLAINTIFF DOES NOT MOOT HIS CLAIMS ............................ 3

    A.  Plaintiff's handgun licenses automatically expire after three (3) years – and renewal is not automatic – the Second Circuit decision in *Srour* is inapposite. ............. 3

    B.  The City voluntarily issued Plaintiff's premise and carry handgun licenses. ............ 4

    C.  The License Division deliberately chose not to enforce the challenged regulations. ................................................................................................. 5

        i.  Other cases of post-amendment enforcement ............................................. 5

        ii.  Recent representations of Plaintiff's "dangerousness" ............................. 6

        iii.  Confirmation that any indiscretion will be used to disarm Plaintiff ........... 7

        iv.  December 2022 amendments did not narrow the scope to "violent" individuals ....................................................................................... 7

        v.  December 2022 amendments removed consideration of the recency and severity of events ................................................................................. 8

    D.  There is a reasonable expectation that the City will continue to enforce the challenged rules. ......................................................................................................... 8

    E.  Plaintiff has not received *any* of the relief he sought in his Complaint. ................. 11

II.  NOMINAL DAMAGES IN A PRE-ENFORCEMENT CHALLENGE ARE PROPER ........ 12

CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abekassis v. New York City, New York*,
  2021 WL 852081 (2d Cir. Mar. 4, 2021) .................................................................................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 2

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005) ..................................................................................................... 2

*Babbitt v. United Farm Workers National Union*,
  442 U.S. 289 (1979) ............................................................................................................... 10

*Bell v. Greenbrier Int'l, Inc.*,
  2024 WL 4893270 (S.D.N.Y. Nov. 26, 2024) .......................................................................... 2

*Carey v. Piphus*,
  435 U.S. 247 (1978) ............................................................................................................... 12

*Cerame v. Slack*,
  123 F.4th 72 (2d Cir. 2024) .................................................................................................... 10

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ....................................................................................................... 1, 4, 10

*Gazzola v. Hochul*,
  88 F.4th 186 (2d Cir. 2023) .................................................................................................... 12

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) ..................................................................................................... 3

*Honig v. Doe*,
  484 U.S. 305 (1988) ................................................................................................................. 9

*Husejnovic v. DeProspo*,
  225 A.D.3d 597 (2d Dept. 2024) .............................................................................................. 4

*Kantarakias v. Kim*,
  226 A.D.3d 1020 (2d Dept. 2024) ............................................................................................ 4

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ............................................................................................... 2, 3

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986) .............................................................................................................. 12

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) ................................................................................................... 2

*Northeastern Florida Chapter of the Associated General Contractors v. Jacksonville*,
    508 U.S. 656 (1993) ................................................................................................................ 7

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*,
    477 U.S. 619 (1986) .............................................................................................................. 10

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018) ................................................................................................. 11

*Shuttlesworth v. City of Birmingham, Ala.*,
    394 U.S. 147 (1969) .............................................................................................................. 12

*Srour v. New York City, New York*,
    117 F.4th 72 (2d Cir. 2024) ........................................................................................... 3, 8, 9

*Srour v. New York City, New York*,
    699 F. Supp. 3d 258 (S.D.N.Y. 2023) .................................................................................. 7

*Steffel v. Thompson*,
    415 U.S. 452 (1974) .............................................................................................................. 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .............................................................................................................. 10

*Taveras v. New York City, New York*,
    2022 WL 2678719 (2d Cir. July 12, 2022) ...................................................................... 5, 6

*United States v. Rahimi*,
    602 U.S. 680 (June 21, 2024) ................................................................................................. 7

**Statutes**

18 U.S.C. 922(g)(8) ........................................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 1, 2
Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1, 2

**Regulations**

38 RCNY 3-03 .................................................................................................................................. 1
38 RCNY 5-10 ........................................................................................................................... passim
New York City Admin. Code 10-303(a)(2) ..................................................................................... 6
New York City Admin. Code § 10-303(f) ....................................................................................... 3

## PRELIMINARY STATEMENT

Joseph Srour ("Plaintiff"), submits the following memorandum of law in opposition to the defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

Plaintiff, a resident of Brooklyn, New York, brought this action seeking declaratory and injunctive relief from subsections (a), (h), and (n) of 38 RCNY 3-03 (rifles/shotguns) and 38 RCNY 5-10 (handguns) to prevent ever having to be subject to the police commissioner's unconstitutional firearm regulations again – whether as an applicant, reapplicant, or as a licensee. The Complaint did not seek an order directing the police commissioner to issue any licenses to Plaintiff – so, the City's voluntary issuance of a license to Plaintiff provided him with *none* of the relief sought in his Complaint.

There continues to be a case and controversy between the parties. The City's voluntary cessation of its enforcement of the challenged rules does not automatically render this case moot. While the Second Circuit held that the issuance of a rifle/shotgun license mooted Plaintiff's claims for injunctive relief, it was based on the court's assumption that the renewal of a rifle/shotgun license is "automatic" under New York City Admin. Code 10-303(f).

Plaintiff's challenge to the handgun rules under 38 RCNY 5-10 is inapposite.

Handgun licenses are *not* automatically renewed. Every handgun license in New York City – premise and concealed carry – expires three (3) years after its issuance. Plaintiff's handgun licenses will expire by operation of law in March 2027[1], meaning that Plaintiff will, again, be subject to enforcement of 5-10(a), (h), and (n). Without a court order (or pending litigation), the City is "free to return to its old ways." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

---

[1] Penal Law § 400.00(10).

1

The City's voluntary issuance of premise handgun and concealed carry handgun licenses has not altered the controversy between the parties; the controversy is capable of repetition upon reapplication and/or upon Plaintiff's violation of any law, rule, or ordinance. And because of the overly broad and subjective nature of the "grounds for denial," which encompass innocuous violations of the law and false arrest, there is a reasonable expectation that Plaintiff will, once again, be subjected to the denial of his handgun applications.

## ARGUMENT

### Standard for Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Bell v. Greenbrier Int'l, Inc.*, No. 24-CV-3559 (JMF), 2024 WL 4893270, at *2 (S.D.N.Y. Nov. 26, 2024) quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Bell*, at *2 quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), aff'd, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Id.* quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

A Rule 12(b)(6) motion, on the other hand, tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Bell*, at *2 citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth

in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).

**I. DEFENDANTS' VOLUNTARY ISSUANCE OF PREMISE AND CONCEALED CARRY HANDGUN LICENSES TO PLAINTIFF DOES NOT MOOT HIS CLAIMS**

The Complaint challenges the NYPD police commissioner's rules affecting the ability to possess and carry handguns.[2] Specifically, Plaintiff seeks a judicial declaration that 38 RCNY 5-10 (a), (e), (h), and (n) violate the Second Amendment and a court order permanently enjoining their enforcement [ECF Doc. 1 at ¶¶ 3-4].

**A. Plaintiff's handgun licenses automatically expire after three (3) years – and renewal is *not* automatic – the Second Circuit decision in *Srour* is inapposite.**

While this Court may be bound by the Second Circuit's ruling in *Srour I* concerning the renewal of Plaintiff's rifle/shotgun license, the Circuit's holding is inapplicable to handgun renewals. In *Srour I*, the City's appeal was deemed moot by the License Division's issuance of a rifle/shotgun license to Plaintiff based on the Circuit's view that, under New York City Admin. Code 10-303(f), renewal of a r/s license was "automatic."[3] *Srour v. New York City, New York*, 117 F.4th 72, 83 (2d Cir. 2024) ("there is no evidence to support the contention that [Srour's] license will not in fact be subject to automatic renewal, as is required by section 10-303(f) of the Code").

But the renewal of Plaintiff's premises handgun license and concealed carry license is *not* automatic. Under Penal Law § 400.00(10), handgun licenses issued in New York City automatically expire three (3) years after their issuance. Individuals are then required to reapply

---

[2] In light of the Second Circuit decision in *Srour v. New York City, New York*, 117 F.4th 72, 83 (2d Cir. 2024) concerning the rifle/shotgun renewal process, Plaintiff's arguments are confined to the police commissioner's handgun regulations under 38 RCNY 5-10.
[3] This conclusion was reached notwithstanding that the r/s renewal is "subject to automatic renewal, upon sworn application, and without investigation, <u>unless the police commissioner has reason to believe that the status of the applicant has changed since the previous application</u>." New York City Administrative Code § 10-303(f).

3

under Penal Law § 400.00 for a new license, where they are subjected to the police commissioner's "Grounds for Denial" under 38 RCNY 5-10.

Plaintiff's premises handgun license and concealed carry licenses were issued in March 2024 and automatically expire in March 2027 at which time Plaintiff will, again, be subject to the enforcement of § 5-10(a), (h), and (n). A permanent injunction of the regulations will provide Plaintiff with the relief he seeks.

**B. The City voluntarily issued Plaintiff's premise and carry handgun licenses.**

It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

The issuance of a handgun license to Plaintiff was entirely within the discretion of the License Division. It has been widely established for decades in New York courts that "a pistol licensing officer has **broad discretion** in ruling on permit applications." *Kantarakias v. Kim*, 226 A.D.3d 1020, 1021 (2d Dept.) appeal dismissed, 42 N.Y.3d 1040 (2024) (rejecting application for an order of mandamus directing the issuance of a license to the petitioner, whose background had no indicia of violence); *Husejnovic v. DeProspo*, 225 A.D.3d 597 (2d Dept.) appeal dismissed, 41 N.Y.3d 1008 (2024) (same).

No court order or statute required the License Division to issue a license to Plaintiff. Nor did Plaintiff's application force the License Division to perform any act other than process his application documents. The decision of whether to deny or approve Plaintiff's applications was within the "broad discretion" of the licensing officer and issuance of handgun licenses to Plaintiff was a voluntary act.

4

### C. The License Division deliberately chose not to enforce the challenged regulations.

The License Division did not apply its rules to Plaintiff's 2023 applications. Had the rules been enforced in the same manner that they are applied to other applicants – and/or consistent with the City's representations about Plaintiff's ineligibility to possess firearms – his applications would have been denied. Plaintiff's applications were only approved to moot his claims for injunctive and declaratory relief in this case and in *Sour I*.

#### *i. Other cases of post-amendment enforcement*

Recent accounts demonstrate that the same innocuous events are used to disarm other applicants. *Flaifel v. New York City,* 1:24-cv-06838-MMG (S.D.N.Y.) challenges 38 RCNY 5-10 license based on a "poor driving history" and arrests for driving with a suspended license [ECF Doc. 1]. The plaintiff in *Flaifel* already holds a New York State concealed carry handgun license that was issued by a judicial licensing officer in Westchester County and was seeking the NYPD endorsement required for the five (5) boroughs, which was denied. See, Penal Law § 400.00(6).

In *Cohen v. New York City*, 1:24-cv-02594-LJL-SLC, the plaintiff's premise handgun license was revoked because he was in a car accident and charged with various traffic-related offenses, including reckless driving– which were all dismissed and sealed by the court.

In *Taveras v. New York City*, *New York*, No. 21-398, 2022 WL 2678719, at *1 (2d Cir. July 12, 2022), the City denied the plaintiff's application for a rifle/shotgun license because they considered him "dangerous" based on an August 2011 arrest for domestic violence, a corresponding order of protection against him, and a November 2011 domestic violence complaint against him by the same victim.[4] Upon remand from the Second Circuit for reconsideration of the claims after *Bruen*, the City spontaneously issued this "dangerous" person a rifle/shotgun license

---

[4] The order of protection expired in February 2012, and the criminal charges were ultimately dropped. *Taveras*, at *1.

and declared his injunctive relief claims moot. The district court agreed. See, *Taveras*, at \*7 ("Plaintiff denies receiving such a license and argues that in any event, Defendants should not be able to avoid review of the City's gun control regime by mooting individual cases"). The City then served Plaintiff with a Rule 68 offer of judgment to press dismissal. See also, *Abekassis v. New York City, New York,* No. 20-3038, 2021 WL 852081, at \*1 (2d Cir. Mar. 4, 2021) (appeal rendered moot by New York City's spontaneous issuance of license to previously denied plaintiff deemed 'dangerous').

The City uses the full force of the § 5-10 subsections to disarm non-disqualified people. Their temporary cessation against Plaintiff is no indication that Plaintiff will not suffer harm form their enforcement as a licensee and/or upon reapplication.

### ii. Recent representations of Plaintiff's "dangerousness"

In its October 25, 2023 letter motion to this Court, the City pressed a stay of this Court's permanent injunction of New York Admin. Code 10-303(a)(2) as necessary for "public safety" because "the License Division believes that Plaintiff is both 'dangerous' and not law-abiding." *Srour I*, 1:22-cv-00003-JPC [ECF Doc. 45, p. 3 n. 3].

Yet, after Plaintiff's opposing brief was filed in the Second Circuit, the City issued all three licenses to this "dangerous" and "not law-abiding" person notwithstanding his "poor driving history," "violent nature of the circumstances surrounding the [ ] arrest" and "inability to abide by laws and regulations" which "shows a lack of moral character." *Srour I*, [ECF Doc. 27-4 (Notice of Disapproval After Appeal)].

Either the City lied to this Court in its submission, in which case it should be severely sanctioned, or the police commissioner suspended its rules to moot this case and the City's appeal in *Srour I*.

### *iii. Confirmation that any indiscretion will be used to disarm Plaintiff*

During oral argument in *Srour I*, the City confirmed that the License Division will continue to enforce the "moral character" requirement against Petitioner to deny a renewal of his license should he violate even the most innocuous law. See, Oral Argument at 35:20-36:05 ("…if new facts come to light" if Plaintiff "again decides to violate laws. It's not just driving history, it's ignoring direct instructions about not doing certain things for public safety reasons. So he was told "this is illegal, don't do this," and then he did it again [including] violations of the Navigational Law" and "if that kind of thing happens again…"[5]

### *iv. December 2022 amendments did not narrow the scope to "violent" individuals*

The City claims that the December 2022 amendment to the preamble of § 5-10[6] narrows the City's 'moral character' assessment to a "dangerousness" determination [City Br. at 10], but the unamended subsections (a)-(n) dispel such claims.

To be sure, not paying child support or taxes [sub. (l)], a poor driving history [sub. (h)], and mere 'arrests' without a conviction [sub. (a)] have no bearing on whether an individual is "violent."[7] See also, *Northeastern Florida Chapter of the Associated General Contractors v. Jacksonville*, 508 U.S. 656, 662 & n. 3 (1993) (challenged statute had not been sufficiently altered to allow a conclusion that the conduct would not be repeated).

---

[5] https://1drv.ms/u/c/88f4a2f0843fc612/ERLGP4TwovQggIhZ8wAAAAABIq45kiw0jwgZbIFG2NrTxw?e=zvJIlB

[6] This Court held that the December 2022 amendment to the preamble mooted Plaintiff's claims for injunctive relief in *Srour I*. See, *Srour v. New York City, New York*, 699 F. Supp. 3d 258, 273 (S.D.N.Y. 2023), vacated in part, 117 F.4th 72 (2d Cir. 2024) ("[Plaintiff] has not been denied permission to possess firearms pursuant to a City official's application of the current version of either Section 3-03 or Section 5-10. Nor has he shown how he might bring a preemptive challenge against the amended provisions prior to being denied a license or permit under them, or even that he has reapplied for such a license or permit.").

[7] Disqualifying events must be indicative of violent propensities - not merely infractions or violations of the law, but court adjudications that the individual poses a poses a credible threat to the physical safety of another. *United States v. Rahimi*, 602 U.S. 680, 698-700 (June 21, 2024) (discussing the historical traditions of disarming violent individuals and holding that 18 U.S.C. 922(g)(8), disarming those subject to an order of protection used by a court after a hearing, is supported this Nation's tradition of firearm regulation).

7

> ***v. December 2022 amendments removed consideration of the recency and severity of events***

The City also claims that the "recency" of "traffic violations" and "arrests" is now being considered – but when the License Division denied Plaintiff's application in 2019, the pre-amendment version of 5-10(n) required the License Division to "consider all relevant factors, including but not limited to the number, recency and severity of incidents and the outcome of any judicial or administrative proceedings" [See, Declaration of Amy L. Bellantoni at Ex. 1] - yet that made no difference in 2018 when sealed arrests from 1996 – over 23 years prior - and traffic tickets were used to violate Plaintiff's Second Amendment rights. It is doubtful that an additional 4 years tipped the scales in Plaintiff's favor. Nor is "candor" regarding sealed arrests on an application relevant (or indicative of a "violent" nature) [City Br. at 11].

Actually, circumstances are worse now. The December 2022 amendments *removed* such considerations from 5-10(n). There is no longer a requirement that the License Division consider the "number, recency and severity of events" when determining handgun license applications [City Br. at 3; Bellantoni Ex. 1].

**D. There is a reasonable expectation that the City will continue to enforce the challenged rules.**

Defendants voluntarily and temporarily ceased enforcement of § 5-10(a), (h), and (n) against Plaintiff, however, without a court order there is a reasonable expectation the rules will be enforced against Plaintiff in the future – as they are being enforced against other individuals now.

An alleged wrongdoer's voluntary cessation of a disputed action will still render a case moot if the wrongdoer can show that (1) there is no "reasonable expectation" the action will recur, and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Srour*, 117 F.4th 72, 82 (2d Cir. 2024).

The City was able to skirt a merit-based review of the equitable relief ordered by this Court against the police commissioner's rifle/shotgun rules because the Circuit believed that the renewal of rifle/shotgun licenses is automatic and non-discretionary. *Srour*, 117 F.4th at 83.

But the City cannot meet the "substantial burden" of demonstrating that subsections (a), (h), and (n), will be enforced against Plaintiff again upon renewal of his handgun licenses because handgun licenses are not automatically renewable. And the City has already confessed that any infraction will be used as grounds to deny Plaintiff's renewal. See, Oral Argument at 35:20-36:05 [link at n. 3 above].

For purposes of assessing the "likelihood that the government will reinflict a given injury, courts generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988) (finding a reasonable likelihood that harm would occur again because of the plaintiff's circumstances as a special education student).

But where the purported 'misconduct' is as innocuous as traffic infractions and violations of navigational law – or where the circumstances are beyond the control of the individual, as with the false arrest and charges against Plaintiff that were dismissed and sealed in 1996 – it really cannot be said that Plaintiff will not be subjected to harm again upon renewal under subsections (a), (h), or (n). To the contrary, it is "equally probable that…[Plaintiff] will again be subjected to the same… action for which he initially sought relief." *Honig*, 484 U.S. at 321.

The City disarmed Plaintiff based on a false arrest 20 years prior that was dismissed and sealed, and petty offenses like traffic infractions and minor violations of the navigational law. The recurrence of circumstances that are not within the plaintiff's control cannot be calculated, and it is reasonable to believe that Plaintiff will, again, incur traffic violations. That said, the City

9

confirmed that *any* violation of the law will be considered against Plaintiff [see, supra.]. See, *City of Mesquite*, 455 U.S. at 289 (proceeding to consider the merits of the district court's vagueness holding because the government "announced just such an intention" to reinstate the ordinance if the district court judgment was vacated).[8]

In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979), which involved a pre-enforcement challenge to a statute that made it an unfair labor practice to encourage consumers to boycott an agricultural product "by the use of dishonest, untruthful and deceptive publicity," the Supreme Court held that the plaintiffs' challenge presented a case or controversy within the jurisdiction of the district court based on the plaintiffs' position that "erroneous statement is inevitable in free debate;" their fear of enforcement was not "imaginary or wholly speculative." *Babbitt*, 442 U.S. at 301-302.

And administrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) citing, *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625–626, n. 1 (1986) ("If a reasonable threat of prosecution creates a ripe controversy, we fail to see how the actual filing of the administrative action threatening sanctions in this case does not").

It is not necessary for Article III standing that an enforcement action against the plaintiff actually occurred. *Susan B. Anthony*, 573 U.S. at 158 citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); see also, *Cerame v. Slack*, 123 F.4th 72, 87 (2d Cir. 2024) (finding that the threat of enforcement resulting in discipline was credible and substantial where defendants "have not disavowed enforcement of the new rule").

---

[8] There is also no guarantee that, without a court order enjoining rules used to disarm individuals with the unrestrained discretion under subsection (n) and based on violations of the vehicle and traffic law, sealed arrests, the City will not disarm Plaintiff in 2 years – or that Ms. Berkovich's replacement as the Director of the License Division will not revert to enforcing them against Plaintiff to deny his renewal applications.

Plaintiff has the right to violate local ordinances and non-criminal laws without being permanently disarmed by the government. And Plaintiff's fear of enforcement is genuine, as other individuals have been disarmed by the License Division as a result of the enforcement of 5-10(a), (h), and/or (n) (see above).

**E. Plaintiff has not received *any* of the relief he sought in his Complaint.**

A lawsuit - or an individual claim - becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation." *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018). In *ZocDoc*, the Second Circuit found that the defendants' Rule 67 deposit, by itself, could not have rendered the plaintiff's action moot because the Complaint sought damages and an injunction. And after the Rule 67 deposit, the plaintiff had not yet "actually received" any funds nor was there an injunction in place. "At that point in the litigation, the district court could still provide these remedies—and did so when it subsequently entered judgment in [plaintiff's] favor…That judgment, which stipulated that a specified amount of damages should be paid and that an injunction should be entered, "is quintessentially a ruling on the merits of a case…Accordingly, [the plaintiff's] individual claims could not have been "mooted" prior to that time by the Rule 67 deposit." *ZocDoc*, 909 F.3d at 542.

Plaintiff did not sue for a license. The Complaint sought declaratory and injunctive relief against the enforcement of, *inter alia*, 38 RCNY 5-10 (a), (h), and (n) and presumed nominal damages based on the facial unconstitutionality of the challenged regulations.

Like the plaintiff in *ZocDoc*, Plaintiff has received *none* of the relief he sought in his Complaint [contra, City Br. at 12, 13]. The Complaint does not seek an order directing the City to

11

issue Plaintiff a license. Plaintiff seeks the permanent injunction of subsections (a), (h), and (n) of 5-10 so that he can be free of unconstitutional and discretionary firearm regulations and enforcement upon renewal and to prevent suspension and/or revocation. The issuance of a license did not free Plaintiff from those regulations – even as a licensee, Plaintiff's right to be armed is subject to government discretion. When rules such as this make "the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official— as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969).

## II. NOMINAL DAMAGES IN A PRE-ENFORCEMENT CHALLENGE ARE PROPER

"As the Supreme Court has made clear, a plaintiff *has suffered an injury-in-fact* and has standing to bring a case when he is facing the threatened enforcement of a law that is sufficiently imminent." *Gazzola v. Hochul*, 88 F.4th 186, 202 (2d Cir. 2023), cert. denied, 144 S. Ct. 2659 (2024). Plaintiff's injury-in-fact is amenable to at least presumed nominal damages. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n. 11 (1986) (nominal damages are allowed for constitutional violations in the absence of proof of actual injury); *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.").

## CONCLUSION

Defendants' motion to dismiss should be denied in its entirety, except where expressly consented to.[9]

Dated: January 27, 2025
       Scarsdale, New York

                                 THE BELLANTONI LAW FIRM, PLLC
                                 *Attorneys for Plaintiff*

                By:   *Amy L. Bellantoni*
                        Amy L. Bellantoni
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583
                        abell@bellantoni-law.com

---

[9] Plaintiff takes no position with regard to that portion of the City's motion to dismiss the individual capacity claims against Nicole Berkovich.