UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                 :

JOSEPH SROUR,                               :

                    Plaintiff,         :

                                 :

               -v-                 :            23 Civ. 9489 (JPC)

                                 :

NEW YORK CITY, *et al.*,              :         OPINION AND ORDER

                               :

                   Defendants.      :

                               :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Joseph Srour brings this action under 42 U.S.C. § 1983 to challenge the constitutionality, facially and as applied to him, of New York City's regulations governing the issuance of permits for rifles and shotguns and of licenses for handguns. Specifically, Srour alleges that the City's enforcement of the recently-amended versions of Sections 3-03 and 5-10 of Title 38 of the Rules of the City of New York ("RCNY") impose an "absolute bar" on his ability to exercise his rights under the Second and Fourteenth Amendments. That supposed barrier to Srour's exercise of his constitutional right to possess firearms is the "actual harm" on which his request for injunctive relief is based. Just days before commencing this lawsuit, Srour applied for a permit to own and possess rifles and shotguns and a license to keep handguns in his home, and then days later he applied for a license to carry a concealed handgun. Srour anticipated the "inevitabl[e]" denial of those applications. Yet, a few months later, in March 2024, the New York City Police Department ("NYPD") License Division granted those applications.

      Srour thus now is able to exercise the very constitutional rights that he alleges in this litigation have been barred. His claims for prospective relief therefore are moot and dismissed for

lack of subject matter jurisdiction.  His damages claims under Section 1983 are dismissed for failure to state a claim.

## I.  Background[1]

### A.  Facts

This is the second time that Srour has brought a challenge in this Court to New York City's regulations for issuing rifle and shotgun permits and handgun licenses.

His first action, *Srour v. New York City*, No. 22 Civ. 3 (JPC) (S.D.N.Y.) ("*Srour I*"), concerned applications that he had submitted to the NYPD License Division in 2018 seeking a permit to possess rifles and shotguns in his home and in 2019 seeking a license to possess handguns in his home.  *See* Am. Compl. ¶¶ 21-22; *Srour v. New York City ("Srour I")*, 699 F. Supp. 3d 258, 261 (S.D.N.Y. 2023).  The License Division denied both applications pursuant to subsections (a), (e), (h), and (n) of Section 3-03 and subsections (a), (e), (h), and (n) of Section 5-10 of Title 38 of the RCNY, and Section 10-303(a)(2) and (9) of the New York City Administrative Code.  Am. Compl. ¶¶ 23-25.  The License Division's Appeals Unit denied Srour's timely appeals, "pointing to Srour's prior arrests, bad driving history, and supposedly false statements on the applications as the reasons for denial."  *Srour I*, 699 F. Supp. 3d at 261; *see* Am. Compl. ¶ 23.  That prompted Srour to sue New York City and the NYPD Commissioner in this Court.  *See Srour I*, 699 F. Supp. 3d at 261.  He argued that the versions of Sections 3-03 and 5-10 of Title 38 of the RCNY in place

---

[1] The Court takes these allegations from the Amended Complaint, Dkt. 14 ("Am. Compl."). In the present posture, the Court accepts the Amended Complaint's factual allegations as true and draws all reasonable inferences in Srour's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  The Court at this stage may also consider statements or documents incorporated into the Amended Complaint by reference.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019).

at the time of his 2018 and 2019 applications,[2] as well as the related provisions of the New York City Administrative Code, were facially invalid under the Second Amendment.

This Court granted partial summary judgment to Srour on October 24, 2023, holding that enforcement of the challenged provisions violated his constitutional rights and enjoining the enforcement of New York City Administrative Code Section 10-303(a)(2) and (a)(9). Am. Compl. ¶ 29; *see Srour I*, 699 F. Supp. 3d at 262. The next day, the City filed an interlocutory appeal challenging this Court's holding that Section 10-303(a)(2) violated the U.S. Constitution by requiring applicants to have "good moral character" to be issued a rifle and shotgun permit. Am. Compl. ¶ 30; *see Srour v. New York City* ("*Srour I*"), 117 F.4th 72, 76 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (Mem.) (2025).

On October 26, 2023, while the appeal in *Srour I* was pending, Srour filed new applications with the License Division for a rifle and shotgun permit and a handgun premises license. Am. Compl. ¶ 31. Then, on November 6, 2023, Srour applied for a concealed-carry license ("Carry License"). *Id.* ¶ 32. This action concerns harm Srour alleges from the City's anticipated denial of those two applications (the "2023 Applications").

Srour commenced this action on October 29, 2023, Dkt. 1, and filed an Amended Complaint on November 9, 2023, Dkt. 14. Srour alleges that his 2023 Applications were "futile" because "[t]here is no likelihood that [his] pending license applications will be approved by the License Division." Am. Compl. ¶ 35. According to Srour, the City's enforcement of Sections 3-03 and 5-10 of Title 38 of the RCNY, as well as the License Division's "permanent characterization"

---

[2] While *Srour I* was being litigated, Sections 3-03 and 5-10 of Title 38 of the RCNY were amended in response to the U.S. Supreme Court's opinion in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 597 U.S. 1 (2022). Am. Compl. ¶¶ 27-28; *see Srour I*, 699 F. Supp. 3d at 261.

of him as "dangerous" and "not law-abiding," *id.* ¶ 67 (internal quotation marks omitted), raised an "absolute and permanent bar" on his right to own or carry firearms in self-defense in New York City, *id.* ¶ 36.  Notwithstanding the parts of Sections 3-03 and 5-10 that were amended in 2022, Srour felt that the denial of his 2023 Applications was "*certain*" based on the same grounds as the denials of his 2018 and 2019 applications.  *Id.* ¶ 50 (emphasis in original).  Srour further contends that even if the City retreats from its view of him as dangerous and not law-abiding, "enforcement of the challenged regulations will inevitably cause [his 2023 A]pplications to be denied, as they were previously."  *Id.* ¶ 42.  According to Srour, the "events underlying" those prior denials had not changed in the interim, including Srour's record of two arrests nearly three decades ago that were dismissed and sealed, driving violations more than two decades old, and "two summonses for navigational law violations in 2012 and 2015."  *Id.* ¶ 34.

Consequently, Srour alleges "actual harm from the enforcement of regulations" that, he claims, "pos[e] an ***absolute barrier*** to the exercise of his preexisting and presumptively protected right to possess and carry firearms for self-defense."  *Id.* ¶ 51; *see* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").  He also claims to suffer from "stress, worry, and the physical manifestations of the same" that comes from "the psychological weight of being arbitrarily stripped of the ability to protect and defend himself, his home, and his family."  Am. Compl. ¶¶ 52-54.  Srour further alleges harm due to the License Division's "permanent categorization" of him as "dangerous" and "not law-abiding."  *Id.* ¶ 67 (internal quotation marks omitted).  The harms Srour alleges in this case, thus, all arise from the suppression of his Second Amendment right "to keep and bear Arms" by virtue of the perceived "absolute barrier" to that constitutional right imposed by the City's enforcement of its firearms regulations, which, Srour maintains, would

inevitably lead to the denial of his 2023 Applications.  That "inevitabl[e]" outcome, however, did not occur.

## B. Procedural History

Srour brings this action against Defendants New York City, Jessica S. Tisch[3] in her official capacity as the Commissioner of the NYPD, and Nicole Berkovich, the Director of the NYPD's License Division, in her individual capacity.  In his Amended Complaint, Srour seeks relief under 42 U.S.C. § 1983 for Defendants' deprivations of his rights under the Second and Fourteenth Amendments pursuant to (i) the "moral character" requirement of Section 3-03 and subsections (a), (e), (h), and (n) of Title 38 of the RCNY ("Claim I"); (ii) the "moral character" requirement of Section 5-10 and subsections (a), (e), (h), and (n) of Title 38 of the RCNY ("Claim II"); and (iii) New York City's alleged policy, practice, and procedure, enforced by the License Division and Berkovich, of labeling Srour "dangerous" and "not law-abiding" ("Claim III").  Am. Compl. ¶¶ 69-76.  Srour also asserts a claim of municipal liability against New York City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ("Claim IV").  Am. Compl. ¶¶ 77-78.  The Amended Complaint seeks injunctive and declaratory relief, nominal and compensatory damages, punitive damages against Berkovich, and costs and fees under 42 U.S.C. § 1988.  *Id.* at 14-15.

---

[3] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Tisch was automatically substituted for Edward A. Caban, her predecessor, upon her appointment as Commissioner of the NYPD on November 25, 2024.  *See* NYPD, Police Commissioner, https://www.nyc.gov/site/nypd/about/leadership/commissioner.page (last visited Sept. 14, 2025); Mayor Adams Appoints Jessica Tisch as NYPD Commissioner, https://www.nyc.gov/mayors-office/news/2024/11/mayor-adams-appoints-jessica-tisch-nypd-commissioner (last visited Sept. 14, 2025).  Therefore, the Clerk of the Court is respectfully directed to substitute Jessica S. Tisch for Edward A. Caban in the caption of this case.

Srour appended to his Complaint an emergency motion for a preliminary injunction, Dkts. 5, 8, which this Court denied without prejudice because he did not establish a likelihood of success on the merits, "specifically with respect to his standing to bring this action."  Dkt. 19.  In the interim, Srour had amended his complaint.  Dkt. 14.  Defendants then moved to dismiss the Amended Complaint on grounds of standing and a failure to state a claim for relief against Berkovich in her individual capacity.  Dkts. 33-34.  Before this Court ruled on that motion, and while *Srour I* was pending appeal before the Second Circuit, the License Division in March 2024 granted Srour's 2023 Applications, allowing him to obtain a rifle and shotgun permit and a Carry License.  *See* Dkt. 39 (letter from Srour's counsel, filed April 24, 2024) at 1-2.  Aware that the *Srour I* defendants were raising mootness arguments on appeal based on the License Division's granting of the 2023 Applications, the Court stayed this case pending the Second Circuit's resolution of *Srour I.*  Dkts. 40, 43.

In September 2024, the Second Circuit held that Srour's receipt of a rifle and shotgun permit mooted his claims for injunctive and declaratory relief with respect to New York City Administrative Code Section 10-303(a)(2) and therefore vacated this Court's judgment enjoining that provision.  *Srour I*, 117 F.4th at 77.  Following the Second Circuit's ruling, this Court denied Defendants' first motion to dismiss without prejudice and permitted the filing of a renewed motion.  Dkt. 48.  Defendants subsequently filed a renewed motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Dkts. 49, 50 ("Motion"), which this Opinion and Order addresses.

## II.  Legal Standard

### A.  Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The Court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and brackets omitted).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*  A defendant challenging subject matter jurisdiction may "make a fact-based Rule 12(b)(1) motion" by proffering evidence beyond the complaint. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  Where, as here, the extrinsic evidence is uncontroverted, there is no need for a court to make findings of fact when determining whether it has subject matter jurisdiction.  *See Paul v. Decker*, No. 20 Civ. 2425 (KPF), 2021 WL 1947776, at *3 (S.D.N.Y. May 14, 2021) (stating that findings of fact are necessary if the defendant's extrinsic evidence is "material and controverted" (quoting *Carter*, 822 F.3d at 57)).

### B.  Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III.  The Challenged Regulations

New York Penal Law Section 400.00(1)(b) requires an applicant for a handgun license to be "of good moral character."  New York City enforces that law in Title 38 of the RCNY, and it defines "good moral character" for purposes of approving applications for handgun licenses in Section 5-10.  As relevant here, Section 5-10 states that a determination of whether an applicant lacks "good moral character" "shall be made based upon consideration of the following factors," among others:

> (a)  The applicant has been arrested, indicted or convicted for a crime or violation except minor traffic violations, in any federal, state or local jurisdiction.
>
> * * *
>
> (e)  The applicant made a false statement on their application, or failed to disclose their complete arrest history, including sealed arrests.  Sealed arrests are made available to the License Division pursuant to Article 160 of the Criminal Procedure Law when an application has been made for a license to possess a gun.
>
> * * *
>
> (h)  The applicant has a poor driving history, has multiple driver license suspensions or has been declared a scofflaw by the New York State Department of Motor Vehicles.
>
> * * *
>
> (n)  Other information that demonstrates the lack of good moral character, including but not limited to an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons

8

and/or for public safety, and/or an inability to maintain handgun possession in a manner that is safe to oneself or others.

38 RCNY § 5-10 (as amended Dec. 16, 2022).[4]

## IV.  Discussion

Defendants move to dismiss on grounds of mootness, Srour's failure to state a claim for damages, and his failure to state a claim for relief against Berkovich in her individual capacity. Motion at 7.  Some of Srour's claims can be quickly disposed of.

First, Srour concedes that his claims arising out of Section 3-03 of Title 38 of the RCNY are moot in light of the Second Circuit's ruling in *Srour I*.  Opposition at 3 n.2.[5]  The Court agrees and accordingly dismisses Claim I without prejudice for lack of subject matter jurisdiction.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice." (alteration adopted and internal quotation marks omitted)).

The Court also grants Defendants' uncontested motion to dismiss any claims against Berkovich in her individual capacity for failure to state a claim.  *See* Opposition at 13 n.9 (taking no position regarding this portion of Defendants' motion).  The Amended Complaint fails to allege any deprivation of constitutional rights by Berkovich personally or pursuant to any policy, practice, and procedure of the License Division with which she was involved personally involved.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal

---

[4] Section 3-03 of Title 38 of the RCNY defines "good moral character" for purposes of an application for a rifle and shotgun permit in slightly different terms.  Given Srour's waiver of his challenge to Section 3-03, *see* Dkt. 51 ("Opposition") at 3 n.2, the Court does not quote its text.

[5] "'Although parties cannot waive arguments *against* jurisdiction, they are more than free to waive (or forfeit) arguments *for* it.'"  *Antonyuk v. James*, 120 F.4th 941, 1007 n.63 (2d Cir. 2024) (quoting *Taylor v. Pilot Corp.*, 955 F.3d 572, 582 (6th Cir. 2020) (Thapar, J., concurring in part) (collecting cases)).

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)).  Because Srour has not alleged sufficient facts with respect to Berkovich to "raise a right to relief above the speculative level,"[6] *Twombly*, 550 U.S. at 555, the Court does not reach whether Berkovich is entitled to qualified immunity.  *See Soukaneh v. Andrzejewski*, 112 F.4th 107, 116 (2d Cir. 2024) (explaining that the qualified-immunity inquiry examines whether the facts made out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct).

That leaves Claims II, III, and IV insofar as they allege constitutional violations arising out of Section 5-10 of Title 38 of the RCNY and seek relief from the City and Commissioner Tisch in her official capacity.  Because the Court concludes that Srour's demands for prospective and declaratory relief are moot, it grants Defendants' motion to dismiss those aspects of Srour's claims for lack of jurisdiction under Rule 12(b)(1).  *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019) (dismissal under Rule 12(b)(1) moots an accompanying Rule 12(b)(6) motion).  The Court also dismisses Srour's damages claims under Section 1983 for failure to state a claim because Srour did not plead sufficient facts to allow a reasonable inference that Defendants violated his constitutional rights.  *Iqbal*, 556 U.S. at 678.

## A. Srour's Claims for Injunctive and Declaratory Relief Are Moot

Regardless of the merits of Srour's constitutional claims, "this case is moot if the dispute is no longer embedded in any actual controversy about Srour's particular legal rights."  *Srour I*, 117 F.4th at 81 (internal quotation marks and brackets omitted).  Article III limits federal courts to the resolution of "actual, ongoing cases and controversies."  *Lewis v. Cont'l Bank Corp.*, 494

---

[6] *See also infra* IV.B.

U.S. 472, 477 (1990).  The mootness doctrine "ensures that a litigant's interest in the outcome continues to exist throughout the life of the lawsuit."  *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (internal quotation marks and brackets omitted).  Changed circumstances may cause "a case that presented an actual redressable injury at the time it was filed" to cease involving "such an injury."  *Id.* (internal quotation marks omitted).  "When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III, § 2, is not satisfied and a federal court lacks subject matter jurisdiction over the action."  *New York City Emps. Ret. Sys. v. Dole Food Co., Inc.*, 969 F.2d 1430, 1433 (2d Cir. 1992).

Though a case becomes moot when a plaintiff lacks a "legally cognizable interest in the outcome" of his action, *Srour I*, 117 F.4th at 85 (internal quotation marks omitted), "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  To prevent such gamesmanship, courts recognize exceptions to the mootness doctrine in "'voluntary cessation cases and cases capable of repetition but evading review.'"  *Srour I*, 117 F.4th at 81 (quoting *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)).[7]

When an alleged wrongdoer voluntarily ceases a disputed action, the case may nevertheless be moot if the wrongdoer can show that (1) "'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation'" and (2) "there is no 'reasonable expectation' the action will recur."  *Srour I*, 117 F.4th at 82 (quoting *Granite State Outdoor*

---

[7] Srour refers to the "capable of repetition but evading review" doctrine in his brief, Opposition at 2, but he does not argue that it applies, *see generally id.*  *Cf. Srour I*, 117 F.4th at 82 n.6 (explaining, on appeal in *Srour I*, that Srour "cursorily argue[d]" that the "capable of repetition yet avoiding review" exception applied, but he made no showing that the alleged unconstitutional actions of the City are "so short in duration that they are likely to be moot before litigation can reasonably run its course" (citations omitted)).

*Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)).  The defendant bears the "formidable burden" of showing that there is no reasonable expectation its behavior will recur.  *Id.* (quoting *Mhany Mgmt.*, 819 F.3d at 604).

The Second Circuit's reasoning in *Srour I* informs this Court's inquiry even though, for reasons that will be explained, the Amended Complaint's allegations ultimately do not call for a voluntary-cessation analysis.  There, the Second Circuit held that there was not federal jurisdiction over Srour's challenge to the "good moral character" requirement for a rifle and shotgun permit after he obtained that permit.  *Id.* at 81.  The Circuit explained that Srour's Article III standing was based on the City's denial of that permit.  The City's issuance of the permit to Srour rendered it "impossible for a court to grant him any effectual prospective relief," so the case was moot.  *Id.* (internal quotation marks and brackets omitted).  The panel then turned to Srour's contention that the City's conduct fell under the voluntary-cessation exception.

First, the Second Circuit explained that, by issuing Srour a rifle and shotgun permit, the City "eradicated" the effects of its prior denial of his permit application.  *Id.* at 82 (internal quotation marks and brackets omitted).  Second, the Circuit held that the City met its "stringent and formidable burden" of showing that there was no reasonable expectation that it would repeat its allegedly illegal past conduct—*i.e.*, denying Srour a rifle and shotgun permit "for allegedly unconstitutional reasons."  *Id.* at 82-85 (internal quotation marks and ellipsis omitted).

Several factors led the Second Circuit to conclude that the City satisfied the no-reasonable-expectation prong: the permit was subject to automatic renewal every three years, and the City represented that Srour's character would be reassessed only if he was rearrested or violated laws; there was "no evidence" to support Srour's argument that his license would be "subject to suspension and revocation at the will of the License Division"; and neither was there evidence that

the City issued the permit "specifically to seek vacatur of the permanent injunction" that was being challenged on appeal, especially because Srour's October 2023 application, which was submitted after the notice of appeal was filed, was reviewed under the amended version of Section 3-03, suggesting that his permit was "granted . . . due to [the] change in policy." *Id.* at 82-83 (internal quotation marks omitted).[8]  Srour's 2023 Applications imposed legal obligations on the City to process them, indicating that the City did not impermissibly moot the case by granting them, but instead carried out its legal duties. *Id.* at 84.

"In light of" the Second Circuit's decision in *Srour I*, Srour here waives his claims based on the anticipated (incorrectly) denial of his rifle and shotgun permit applications and confines his arguments "to the police commissioner's handgun regulations under 38 RCNY [§] 5-10." Opposition at 3 n.2.  Nevertheless, *Srour I* guides this Court's conclusion that Srour's remaining challenges based on the handgun regulations are also moot insofar as they seek injunctive and declaratory relief.

Srour's claims for injunctive relief concerning his handgun license applications became moot upon his receipt of a Carry License.[9]  As alleged in the Amended Complaint, Srour's claims for injunctive relief are explicitly based on harms he suffers from the "absolute bar" to his constitutional right to possess and carry firearms resulting from the City's enforcement of its

---

[8] The Second Circuit explained that a "policy change from the government and a representation that, under the current circumstances, the government will not resume the challenged conduct, strongly support that the behavior is not reasonably expected to recur." *Srour I*, 117 F.4th at 83.  This is immaterial to the instant analysis because the policy change involving Section 5-10 occurred before this suit commenced.

[9] As Defendants explain, and Srour does not contest, "[a] Carry License also permits the holder to possess handguns within the home and, thus, the Carry License also satisfies the approved Premises License application."  Motion at 7 n.5 (citing 38 RCNY § 5-01(a), (b)); *see* 38 RCNY § 5-01(b) (describing a Carry License as "a class of license which permits the carrying of a handgun concealed on the person").

firearms regulations. *E.g.*, Am. Compl. ¶¶ 1 ("In this action, *Srour II*, Plaintiff seeks compensatory, declaratory, and injunctive relief . . . for continuing and irreparable harm to Plaintiff arising from Defendants' enforcement of regulations and policies constituting an absolute bar to the exercise of the preexisting rights protected by the Second Amendment and Fourteenth Amendment."), 36 (alleging that the challenged regulations pose "an absolute and permanent bar to Plaintiff's ability to possess or carry any type of firearm for self-defense in New York City"), 51 ("Plaintiff is suffering actual harm from the enforcement of regulations posing an ***absolute barrier*** to the exercise of his preexisting and presumptively protected right to possess and carry firearms for self-defense."), 52 (alleging that Srour is "experienc[ing] the psychological weight of being arbitrarily stripped of the ability to protect and defend himself, his home, and his family"). Srour allegedly suffers this harm because his efforts to obtain a rifle and shotgun permit and a handgun license would be, in his words, "futile," *id.* ¶ 35: the License Division's classification of him as "dangerous" and "not law-abiding" "forecloses any possibility that his pending applications will be approved," *id.* ¶ 40, and thus "[t]here is no likelihood that [his] pending license applications will be approved by the License Division," *id.* ¶ 35. As relief to address this alleged constitutional violation arising from the supposed "absolute and permanent bar to [his] ability to possess or carry any type of firearm," *id.* ¶ 36, Srour seeks an order preliminarily and permanently enjoining Defendants from enforcing Section 5-10's "good moral character" provision. *Id.* ¶ 4, at 14.

Putting aside the speculative nature of these allegations, any purported constitutional barrier posed by enforcement of Section 5-10 vanished upon Srour's receipt of his Carry License in March 2024. With it also went this Court's ability to grant Srour "any effectual prospective relief" with respect to his alleged harm, *i.e.*, the suppression of his constitutional right to possess

and carry a handgun arising from the perceived certain denial of his application for a license to do so.  *See Srour I*, 117 F.4th at 81 (internal quotation marks and brackets omitted).

The voluntary-cessation exception does not save Srour's demands for prospective relief from this jurisdictional bar.  As a threshold matter, there was no allegedly unlawful conduct against Srour that Defendants voluntarily ceased.  Again, Srour alleges an injury from a deprivation of his constitutional right based on Defendants' anticipated enforcement of the City's regulations to deny his handgun license application *in the future*.  *E.g.*, Am. Compl. ¶¶ 35 ("There is no likelihood that Plaintiff's pending license applications will be approved by the License Division . . . ."), 40 ("The License Division's predetermined bias against Plaintiff forecloses any possibility that his pending applications will be approved."), 42 (alleging that the City's "enforcement of the challenged regulations will inevitably cause Plaintiff's applications to be denied"), 50 ("The denial of Plaintiff's applications is *certain*.").  But as these allegations make plain, the License Division had yet to even process Srour's handgun license application when he filed this action, let alone deny that application.  So when the License Division issued Srour a Carry License, it did not change any previous conduct that had caused him injury.  Instead, the License Division simply reviewed Srour's 2023 Applications, found that he qualified for a Carry License (applying the amended version of Section 5-10), and issued him that license.

By contrast, the City *did* change its conduct voluntarily during the appeal in *Srour I*, prompting the Second Circuit's voluntary-cessation inquiry.  Recall that the License Division denied Srour's 2018 and 2019 applications citing, *inter alia*, a provision of the City's Administrative Code; this Court enjoined the enforcement of that provision; the City appealed while maintaining that Srour was ineligible for a rifle and shotgun permit; and while its appeal was pending, the City reversed its prior denial and granted Srour a rifle and shotgun permit.  *See Srour*

*I*, 117 F.4th at 76-77; *see also Srour I*, 699 F. Supp. 3d at 268, 289.  No such reversal occurred here, nor could one have.  Srour commenced this action and filed his Amended Complaint before the City acted on his 2023 Applications.

Srour's attempts to nonetheless shoehorn this case into the voluntary-cessation exception are unavailing.  He argues that the License Division undertook a "voluntary act" when it decided, using its "broad discretion," Opposition at 4, to grant his application for a Carry License, and in doing so, it "deliberately chose not to enforce the challenged regulations" against him.  *Id.* at 5.  But that mischaracterizes what the License Division did.  The License Division has a legal obligation to process applications for handgun licenses.  Srour triggered that obligation by submitting the 2023 Applications.  Only then did the City, through the License Division, begin to act.  In other words, no cessation of an ongoing act harming Srour voluntarily took place.  Thus, the voluntary-cessation exception cannot operate to potentially save Srour's injunctive relief claims from being jurisdictionally foreclosed as moot.

Even if the City's alleged actions did permit an analysis of the voluntary-cessation exception, the case would nevertheless be moot.  The issuance of the Carry License to Srour "eradicated" any harm from the City's potential denial of his handgun license applications.  *See Srour I*, 117 F.4th at 82 (describing as an "easy question" whether the issuance of a rifle and shotgun permit "has 'eradicated' the effects of the City denying Srour a rifle and shotgun permit").

Though a closer question, the City also would meet its "stringent and formidable burden" of showing no reasonable expectation that its allegedly unlawful conduct will recur.  *Id.* (internal quotation marks and ellipsis omitted).  It does appear that, unlike the rifle and shotgun permit at issue in *Srour I*, handgun licenses do not renew automatically in New York.  *See* N.Y. Penal Law § 400.00(10); *see also* Motion at 11; Opposition at 3-4.  Still, there is no "reasonable expectation"

16

that the City will deny any future application by Srour under the challenged regulations if he seeks to renew his license upon the expiration of his current license in early 2027.  Considering the License Division's determination to grant Srour a Carry License under the challenged regulations, it would be reasonable to expect the License Division to grant a future renewal application from Srour under those same regulations, barring any material changes.  Moreover, by early 2027, Srour's record could change, or the law could change, or Srour could elect not to apply for renewal at all.

Srour also argues that the City's denial of his right to possess a handgun could reasonably be expected to recur even sooner if at any point he is arrested or commits a traffic infraction or violation of navigation law, and the City consequently revokes his license.  Opposition at 9.  This is unavailing for the reason that the Second Circuit rejected the same argument in *Srour I*: the "Supreme Court has 'consistently refused to conclude that the case-or-controversy requirement is satisfied by the possibility that a party will be prosecuted for violating valid criminal laws'" because litigants are assumed to "'conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct.'"  *Srour I*, 117 F.4th at 83 (quoting *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018)).

The Court also addresses a theory of harm articulated only in Srour's opposition to Defendants' motion to dismiss.  As explained, in the Amended Complaint, Srour's claims for injunctive relief are explicitly premised on alleged harm resulting from a perceived "absolute bar" of his Second and Fourteenth Amendment rights caused by the City's enforcement of its firearms regulations.  Those claims are moot for reasons discussed.  But in his brief opposing dismissal, Srour articulates for the first time a theory that he is entitled to an injunction barring enforcement of those regulations should the City one day revoke or suspend his license or deny a future

application to renew it.  *See* Opposition at 1.  It is "well settled that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to a defendant's motion to dismiss." *Travelers Indemn. Co. v. U.S. Fire Ins. Co.*, No. 22 Civ. 6440 (MKV), 2024 WL 295355, at *4 (S.D.N.Y. Jan. 25, 2024) (internal quotation marks and brackets omitted).  But even if Srour had adequately alleged this theory, his claims for injunctive relief barring a potential future revocation or application denial would not be ripe because the theory "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted), and therefore presents "a mere hypothetical question" rather than a "real, substantial controversy." *Mendez v. Banks*, 65 F.4th 56, 60 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024) (internal quotation marks omitted).  The City's application of its current regulations resulted in the issuance of the Carry License to Srour.  Further, as discussed in the context of the voluntary-cessation exception, at this point there is no way to know if Srour will engage in conduct that would lead to a revocation or suspension or justify the denial of a renewal application, if the City's law will change, if Srour will elect to seek a renewal at all, or what other contingencies may occur.

In sum, Srour's demands for injunctive relief, which are premised on his allegation that the City's handgun license regulations impose an "absolute bar" on his constitutional right to possess and carry firearms, became moot when the License Division in fact granted his application for a Carry License.  *Cf. Conn. Citizens Def. League, Inc. v. Thody*, No. 23-724-cv, 2024 WL 177707, at *3 (2d Cir. Jan. 17, 2024) (summary order) ("Upon receiving their permits, the individual plaintiffs lost any 'legally cognizable interest' in an injunction that would require the police chiefs to provide a timely process for obtaining such permits.").  And to the extent Srour seeks to challenge the City's future enforcement of the regulations against him, whether in the context of a

renewal application or a suspension or revocation of his license, that theory was not alleged in the Amended Complaint and, in any event, such claims would be entirely speculative and not ripe. This Court thus cannot grant any further relief, and therefore dismisses his claims for injunctive and declaratory relief without prejudice for lack of subject matter jurisdiction.[10]

### B. Srour Fails to State a Claim for Damages Under 42 U.S.C. § 1983

In an action brought under 42 U.S.C. § 1983, mooted injunctive and declaratory relief does not necessarily moot a claim for damages. *See Stokes v. Vill. of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987). Even when a plaintiff has not shown an "actual injury," nominal damages remain available to vindicate "deprivations of certain absolute rights." *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (internal quotation marks omitted); *see Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984). Nevertheless, a party must state a claim under Section 1983 to be entitled to relief of any kind. To do so, a plaintiff must plead sufficient facts to show that he was deprived of federal rights by someone acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). To hold a municipality liable for its employees' unconstitutional actions, a plaintiff must show that he was deprived of a federally guaranteed right by a municipal policy or custom. *See Monell*, 436 U.S. at 691; *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

Srour fails to allege any deprivation of his rights under the Second and Fourteenth Amendments "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Other than asserting that the denial of his 2023 Applications was certain, Srour does not plead facts showing that enforcement of the "moral character" requirement of Section 5-10 of Title

---

[10] The Amended Complaint purports to invoke jurisdiction based on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, *see* Am. Compl. ¶ 7, but that statute neither provides an independent basis for federal jurisdiction nor expands federal subject matter jurisdiction, *see Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024). Even if it did, Article III bars courts from exercising jurisdiction over moot cases.

38 of the RCNY, or any of its subparts, prevented him from exercising his constitutional rights. Am. Compl. ¶¶ 73-74.   Indeed, Srour's allegations make clear that, at the time he filed his Amended Complaint, the City had not even acted on his 2023 Applications or otherwise applied the amended versions of Sections 3-03 and 5-10 to his efforts to obtain a rifle and shotgun permit and a handgun license.  *E.g.*, *id.* ¶¶ 35, 40, 42.  Nor does Srour plead sufficient facts that the City has a "policy, practice, and procedure" of "branding" him "dangerous" and "not law-abiding," and if it did, that this policy barred his exercise of his constitutional rights.  *Id.* ¶ 76.  Though Srour alleges that he suffers from "stress, worry, and the physical manifestations of the same," *id.* ¶ 54, he nonetheless fails to show their origins in any deprivation of his constitutional rights rather than in his speculation that the exercise of those rights would be frustrated.[11]

A claim under Section 1983 cannot be sustained where there is no deprivation of a constitutional right.  *See Bernheim v. Litt*, 79 F.3d 318, 322-23 (2d Cir. 1996) (affirming dismissal of Section 1983 claims where the plaintiff failed to allege a deprivation of procedural due process and a violation of the right to equal protection).  Srour's damages claims therefore are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[11] To the extent Srour seeks to justify nominal damages by characterizing his claims as pre-enforcement challenges with respect to a theoretical revocation of his Carry License or denial of a future renewal application, *see* Opposition at 12, as discussed, Srour does not present such a theory in his Amended Complaint and, regardless, such claims would not be ripe, particularly given the City's issuance of the Carry License under its current regulations and the many contingencies that may occur before that license is up for renewal.  *See supra* IV.A.

## V.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted.  Claim I is dismissed without prejudice for lack of subject matter jurisdiction, along with Claims II, III, and IV to the extent they seek prospective and declaratory relief.[12]  Srour's demands for damages under Claims II, III, and IV are dismissed with prejudice.  The Clerk of Court is respectfully directed to substitute Jessica S. Tisch, in her official capacity as Commissioner of the New York City Police Department, for Edward A. Caban as a Defendant in the caption of this case.  The Clerk of Court further is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: September 15, 2025
      New York, New York

                              JOHN P. CRONAN
                        United States District Judge

---

[12] Because Srour has not requested leave to amend or explained how he would seek to cure the deficiencies identified herein, the Court does not *sua sponte* grant leave to amend.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [for leave to amend] that was not made.").